### Application of GRIFFIN POLLUTION CONTROL CORPORATION.

Patent Appeal No. 75–502.

United States Court of Customs and Patent Appeals.

June 26, 1975.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

LANE, Judge.

## DECISION

This appeal is from the decision of the Trademark Trial and Appeal Board, 182 USPQ 637 (1974), affirming the examiner's ex parte refusal to register the coined word OXINITE (Serial No. 341,654 filed. October 24, 1969) for a complex mixture of gases used in a sewage treatment process for decreasing biochemical oxygen demand, removing greases, and preventing odor development, use since August 30, 1961 being asserted. We affirm.

## Background

Appellant has devised a gaseous treatment of municipal and industrial effluent water systems to reduce odors and aid in the processing of solid waste materials. The mixture of gases used in this gaseous treatment is identified by the word OXINITE. Because of instability of some of the gases in the mixture, the treatment gases require preparation in situ just prior to the time of their intended use. Therefore it is not possible to package the gases for any appreciable time in a container with a label attached thereto.

The gases are produced by a generator which has been variously identified as a "Grifftrol" or an "Oxinitor." Although appellant represented to the examiner that the gas-generating apparatus was sold, at oral hearing appellant stated that gas generators were leased to customers and were not sold. There is no evidence of record to clarify this point.

The specimens are descriptive materials which are said to be distributed to the public in areas where appellant's gas-generating apparatus is in use. It is

William D. Stokes, Arlington, Va. (Laurence, Stokes & Neilan), Arlington, Va., attorney of record, for appellant.

**1358**

appellant's position that these descriptive materials are displayed associated with the goods.

### The Board's Opinion

Registration of the coined word OXIN-ITE was refused under the provisions of sections 1 and 45 of the Trademark Act of 1946 (15 U.S.C. §§ 1051, 1127) on the grounds that OXINITE had not been used as a trademark for the goods and that appellant's mixture of gases did not constitute goods sold or transported in commerce from which trademark rights could arise. The board stated that appellant's descriptive materials could not be considered a display associated with the goods because such a display must be in such close physical association with the goods that a purchaser viewing the display would readily associate the mark with the goods. Since the mixture of gases is unstable and may not physically exist at the time the descriptive materials are distributed, the board found that appellant had not used OXINITE as a trademark for a complex mixture of gases in the manner required by the statute.

Turning to the other portion of the "use in commerce" requirement of section 45 of the statute, the board stated that it was apparent from the unstable nature of the goods and the manner in which they are generated that they do not constitute goods in commerce, much less goods that are sold or transported in commerce. The gases are so intimately related to the gas-generating apparatus that the board believed that they had no existence or marketable value apart therefrom. In the board's view, appellant's gases do not constitute fungible goods bargained for and purchased for their separate and identifiable intrinsic value.

### OPINION

■ It is well settled that a trademark may be affixed to a fluid by displaying the mark conspicuously on the container from which the fluid is sold. *Restatement of Torts* § 718, comment *b* at 573 (1938); *Heintz v. American Tire*

*Machinery Co.*, 54 USPQ 328, 329 (Comm'r Pat.1942). It does not appear from the record that OXINITE was displayed in any manner on the gas-generating apparatus, which contains the gases before they are used. Further, there is no evidence that appellant's gases were sold apart from the sale or lease of the gas-generating apparatus. Appellant admits that it does not separate charges for gases from charges for the sale or lease of the gas-generating apparatus. Under these circumstances appellant has failed to show use of the mark on the goods or their containers.

■ Appellant urges that its descriptive materials distributed to the public in areas where the gas-generating apparatus is in use constitute displays associated with the goods. The board concluded that these descriptive materials were not displays associated with the goods because the goods did not physically exist at the time of the distribution of this literature. We do not agree. A display associated with the goods must be in such association with the goods that a purchaser viewing the display would directly associate the mark with the goods, whether or not the goods physically exist at the time the purchaser views the display. *In re Marriott Corp.*, 1057, 459 F.2d 525, 526–27, 59 CCPA 1055 (1972). In the *Marriott* case we held that a menu was a display directly associated with the goods, certain sandwiches which did not necessarily physically exist at the time a purchaser viewed the menu.

■ We have examined the descriptive materials upon which appellant relies. These materials describe a treatment process, called the OXINITE process, to improve the degradation of domestic and industrial organic wastes. Although OXINITE is defined as a mixture of gases, the treatment process is clearly emphasized. We believe that a purchaser viewing these descriptive materials would directly and distinctly associate OXINITE with a treatment process for municipal and industrial effluent water systems, and would not associate OXINITE with a mixture of gases. We

therefore find that appellant has not shown use of the mark in a display associated with the goods, and affirm the board's conclusion that OXINITE has not been used as a trademark for the goods.

In view of our conclusion that appellant has not used OXINITE as a trademark for the goods, we need not consider whether appellant's mixture of gases constitutes goods sold or transported in commerce from which trademark rights can arise. The decision of the Trademark Trial and Appeal Board is *affirmed.*

*Affirmed.*