2/13/02

THIS DISPOSITION IS
CITABLE AS
PRECEDENT OF THE
TTAB

Paper No. 18
DEB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re Gary R. Johnson
————

Serial No. 75/464,801
————

Steven R. Ormiston and Jack H. McKinney of Ormiston &
McKinney for Gary R. Johnson.

Linda E. Blohm, Trademark Examining Attorney, Law Office
110 (Chris A.F. Pedersen, Managing Attorney).
————

Before Hanak, Hairston and Bucher, Administrative Trademark
Judges.

Opinion by Bucher, Administrative Trademark Judge:

> We hold these truths to be self-evident, that all men are
> Creator their by endowed are they that ,equal created
> with certain inalienable rights, that among these are
> .happiness of pursuit the and ,liberty ,life
>
> *-- Preamble to the Declaration of Independence*
> *GlideText in*

Gary R. Johnson, a United States citizen, resident of
Boise, Idaho, and on April 9, 1998, as a *pro se* applicant,
sought registration of the mark GLIDETEXT for goods
identified in that initial application as "Printed and
Electronic Text structured in Gliding format. That is

words on every other line of text are sequenced in reverse order.  Patent Pending."  During the Office's pre-examination phase, drawing on the identification of goods as listed above, the United States Patent and Trademark Office initially placed the goods identified in this intent-to-use application in International Classes 9 (software, etc.) and 16 (publications, printed matter).

Upon retaining counsel, Mr. Johnson submitted a preliminary amendment to change the identification of goods to simply "printed and electronic text."  Nonetheless, the Trademark Examining Attorney found the identification of goods to be indefinite.

Counsel then submitted an amendment that read as follows:  "printed text that may be used in all types of printed materials," in International Class 16, and "electronic text that may be used in all types of electronic publications," in International Class 9.  With its response to the final Office action and request for reconsideration, applicant also sought to add services in International Class 35, recited as "licensing of computer software."  The Trademark Examining Attorney rejected this amendment as being outside the scope of the earlier identification of goods under 37 C.F.R. §2.71(a).  Because

applicant later withdrew this amendment, this particular issue is no longer before us.

Applicant then offered to amend its identification of goods and recitation of services to the following formulation: "Printed text for use as a component of a book, magazine, newsletter, manual or newspaper," in International Class 16; "electronic text for use as a component of an electronic book, magazine, newsletter, manual or newspaper," in International Class 9; and "licensing of the Glidetext concept," in International Class 35. For the reasons stated in earlier actions (i.e., indefinite as to the identification of goods, and the proposed service mark recital exceeding the scope of the goods in the original identification), the Trademark Examining Attorney refused this latest attempt by applicant to salvage this application, and in her final action, held the identification of goods to be unacceptable.

Both the applicant and the Trademark Examining Attorney have fully briefed this case for appeal,[1] and applicant did not request an oral hearing before the Board.

We affirm the refusal to register.

---

[1] Although applicant included in the heading of this appeal a second trademark application for the mark "GT," Office records indicate that application Ser. No. 75/562,563 is not ripe for appeal and is not currently before the Board.

- 3 -

Applicant argues that he intends to use the mark to identify the specific presentations of text as a component part of printed and electronic products. Consistently throughout the prosecution of this application, applicant has attempted to identify his goods as "text." In its brief, applicant appears to argue that the problem with the prosecution of this application, leading to the instant appeal, is the rigidity of the Trademark Examining Attorney or the inflexibility of the trademark identification and classification system.

By contrast, the Trademark Examining Attorney argues that applicant has been unable to provide an acceptable identification of goods because he has failed to identify any definite goods in trade to which applicant would apply its purported trademark.

According to a copy of parts of applicant's patent that has been made of record, what is claimed in the patent is a method of formatting horizontally structured printed and electronic text. The methodology reverses the word sequence on the second line of the text and every other line thereafter so that the reader, when finished reading a first line from left to right (as is traditional among English-language readers), drops his/her eyes directly below to begin reading the second line from right to left,

continuing in this alternating fashion until finished reading all lines of the paragraph or text.

We pass no judgment on the underlying invention from the standpoint of linguistics or cognitive psychology, but admit that a thorough reading of the patent claims leaves us unsure exactly what goods or service this invention involves.  However, it does seem clear from the examples that applicant has proffered that any text currently printed on a written page, or electronic text (e.g., displayed on a computer monitor), could have the sequencing of words restructured in this serpentine fashion. Presumably this could be accomplished with text already committed to writing by employing optical character recognition software and then integrating a software module modifying the word processing and re-printing functions. With electronic text, the display of the sequencing of the words (as well as any subsequent printing thereof) would necessarily be altered using the appropriate software.[2]

---

[2] "… With the advent of word processing capability, personal computers, and character-recognition computer technology, restructuring of traditionally structured text for smoother reading becomes technically and economically feasible as well as culturally imperative… "
Patent No. 6,113,147, REFORMATTING PRINTED AND ELECTRONIC TEXT FOR SMOOTHER READING, p. 2, ¶3 under "BRIEF SUMMARY OF THE INVENTION."

The sole issue before us is whether applicant has provided an acceptable identification of goods. We agree with the Trademark Examining Attorney that applicant has failed to identify any definite goods in trade to which applicant would apply its purported trademark.

As argued by the Trademark Examining Attorney, even if this GLIDETEXT concept were universally and unquestionably identified in some way with Mr. Johnson, that does not mean the term GLIDETEXT functions as a trademark for the alleged goods that applicant has attempted to identify (or for any goods, for that matter). No matter how much applicant wishes it were so, a moniker given to an idea, a concept, a process or an invention does not magically become a source identifier. *See* *In* *re* *Port-A-Hut, Inc*., 183 USPQ 680, 682 (TTAB 1974).

As argued by the Trademark Examining Attorney, it is still not clear what the goods in trade may be to which applicant intends to apply its mark. Even a thorough review of applicant's patent (i.e., all the portions that have been made of record) does not make it clear whether applicant's invention involves any computerized methodology for print or electronic publishers to achieve this result. For example, an acceptable identification of goods in trade for specialized software could well be something like "text

restructuring software utilities for altering the presentation of printed and electronic text," in International Class 9.

Applicant's tardy attempt at pursuing a registration for a mark used in connection with alleged services ("licensing of computer software" or "licensing of the Glidetext concept") is reminiscent of reported decisions of this Board and our principal reviewing Court, dealing with the designation for a process or method where an earlier applicant also thought the name of its process or invention functioned as a service mark. A concept, or a process, however, is only a way of doing something, and by itself is not an activity for the benefit of others. A term that merely designates a process, or is used only as the name of a process, is not registrable as a service mark. *See In re Universal Oil Products Co*., 167 USPQ 245 (TTAB 1970), aff'd, 177 USPQ 456 (CCPA 1973) [alleged marks used only in the context of a process and not in association with provision of the services]; *In re Griffin Pollution Control Corp*., 517 F.2d 1356, 186 USPQ 166 (CCPA 1975) [Alleged mark identifies a water treatment process but is not used as a mark]; *In re Hughes Aircraft Co*., 222 USPQ 263 (TTAB 1984) [proposed mark used only in connection with a photochemical method, and there was no association between

- 7 -

the applicant's offer of services and the proposed mark];

*In re J.F. Pritchard & Co*., 201 USPQ 951 (TTAB 1979)

[proposed mark used only to identify liquefaction process,

and not used in association with design and construction

services].

As noted earlier, the Trademark Examining Attorney

correctly refused to permit applicant to broaden its

original identification of goods to include a recital of

services.  However, to the extent that applicant may take

the printed or electronic texts of others and change them

consistent with its invention, such a "text reformatting

service" (whether done manually or electronically) may be

analogized to "language translation services" in

International Class 42.  While provided only as possible

examples, if any such wording comports with applicant's

intentions for applying his mark to such products or

services, such an identification of goods or recitation of

services could be deemed acceptable.  However, we cannot

determine whether applicant has adopted a valid trademark

or service mark as this record fails to capture the essence

of the goods and/or services on which the GLIDETEXT mark

will be used.[3]

---

[3]    We have offered these specific hypotheticals to help in
clarifying our position.  However, we hasten to add that none of

Decision:  The refusal to register based upon applicant's failure to adopt an acceptable identification of goods is hereby affirmed.

---

the above examples should be taken as an indication that in the event applicant herein had correctly amended to some such identification (or certainly a recitation of services), that the proposed amendment would or should have been deemed to be within the scope of the original identification of goods.  See 37 C.F.R. §2.71(a):

> "The applicant may amend the application during the course of examination, when required by the Office or for other reasons.
>> (a)  The applicant may amend the application to clarify or limit, but not to broaden, the identification of goods and/or services."