This Opinion is a
Precedent of the TTAB

Mailed: February 12, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Minerva Associates, Inc.*

_____

Serial No. 86430215

_____

Darren B. Cohen of Reed Smith LLP,
    for Minerva Associates, Inc.

Maria-Victoria Suarez, Trademark Examining Attorney, Law Office 102,
    Mitchell Front, Managing Attorney.

_____

Before Ritchie, Kuczma and Adlin,
    Administrative Trademark Judges.

Opinion by Kuczma, Administrative Trademark Judge:

Minerva Associates, Inc. ("Applicant") seeks registration on the Principal Register

of the mark **AWLVIEW** (in standard characters) for, *inter alia*:

> Warehouse inventory management software, including software for wholesale and retail management and supply chain optimization, computer software for single and multiple channel retailers, and computer software for use by specialty and general merchandise retail chains and outlets, superstores, and department stores, all for sales and demand forecasting, store and warehouse inventory management, merchandise planning and allocation, stock control, product tracking, deliveries, receptions, replenishment, procurement, merchandising, distribution,

customer follow-ups, sales analysis across distribution channels, and customer relationship management (CRM) and CRM data compilation and analysis, in International Class 9.[1]

The Trademark Examining Attorney refused registration of Applicant's mark[2] on the ground that Applicant's specimens do not show the applied-for mark in use in commerce as a trademark in connection with the goods in International Class 9, citing Trademark Act Sections 1 and 45, 15 U.S.C. §§ 1051, 1127.[3] When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed. Applicant and the Examining Attorney have briefed the issues. We reverse the refusal to register.

A use-based application, statement of use or amendment to allege use, must include a specimen showing the applied-for mark in use in commerce for each class

---

[1] Application Serial No. 86430215 was filed on October 21, 2014, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), in International Classes 9 and 42. Applicant filed a Statement of Use on November 25, 2015, based on Applicant's allegation of first use and first use in commerce on the goods and services in International Classes 9 and 42 on November 2, 2014.

[2] The final refusal to register applied to the goods in International Class 9 and did not apply to the following services in International Class 42: Software as a service (SAAS) services, namely, hosting software for use by others for use in wholesale and retail management and supply chain optimization, single and multiple channel retailers, specialty and general merchandise retail chains and outlets, superstores, and department stores, all for sales and demand forecasting, store and warehouse inventory management, merchandise planning and allocation, stock control, product tracking, deliveries, receptions, replenishment, procurement, merchandising, distribution, customer follow-ups, sales analysis across distribution channels, sales, customer relationship management (CRM) and CRM data compilation and analysis.

of goods or services specified in the application. Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127; *see also* Trademark Rules 2.34(a)(1)(iv) and 2.56(a); 37 C.F.R. §§ 2.34(a)(1)(iv) and 2.56(a). Specimens serve to demonstrate an applicant's "use [of the mark] in commerce" which is defined, in pertinent part, as follows:

> ... For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—
>
>> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>>
>> (B) the goods are sold or transported in commerce ...

Trademark Act § 45, 15 U.S.C. § 1127.

The specimens in a trademark application provide the USPTO with support for the applicant's verified statements regarding trademark use. In this regard, the manner in which an applicant has employed its asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used as a trademark with respect to the goods identified in the application. *In re Bose Corp.,* 546 F.2d 893, 192 USPQ 213, 216 (CCPA 1976); *In re Griffin Pollution Control Corp.*, 517 F.2d 1356, 186 USPQ 166, 167 (CCPA 1975); *In re E. Kahn's Sons Co.*, 343 F.2d 475, 145 USPQ 215, 216 (CCPA 1965).

Acceptable trademark specimens include labels, tags, or containers for the goods, or displays associated with the goods. The Office may accept another document related to the goods or their sale when it is impracticable to place the mark on the

goods, packaging for the goods, or associated displays. Trademark Rule 2.56(b)(1) and (2), 37 C.F.R. §§ 2.56 (b)(1) and (2). Thus, an acceptable specimen for software "might be a photograph or printout of a display screen projecting the identifying trademark for a computer program." Trademark Manual of Examining Procedure ("TMEP") § 904.03(e) (Oct. 2017). As the Examining Attorney acknowledges, "[t]his could include the actual program that shows the mark in the title bar or launch screens that show the mark in an introductory message box that appears after opening the program."[4] There is, however, no requirement that the mark be placed in a "title bar" or any other specific location, but only that the mark be displayed in such a manner that customers would view it as serving as an indicator of the source of the software.

Here, the goods in the application are "generally identified as 'Warehouse inventory management software' in Class 9."[5] With its Statement of Use, Applicant submitted a page from its website promoting its AWLVIEW software product which the Examining Attorney determined to be insufficient to serve as a specimen for the goods because it failed to display a means by which the goods could be ordered by a prospective consumer.[6] Applicant does not contest this finding[7] and subsequently submitted a copy of a "spec sheet distributed at trade show booths in which the subject goods are presented and orders processed for purchase of the subject goods."[8] This

---

[4] Examining Attorney's Appeal Brief (9 TTABVUE 6).

[5] Applicant's Appeal Brief p. 2 (7 TTABVUE 3).

[6] January 25, 2016 Office Action.

[7] Applicant's Appeal Brief p. 3 (7 TTABVUE 4).

[8] July 25, 2016 Response to Office Action.

specimen was also refused as "not acceptable as a point-of-sale display associated with the goods and appear[s] to be mere advertising material."[9]

In its Request for Reconsideration, Applicant submitted a second substitute specimen consisting of screenshots of the login and search query pages displayed when a customer uses the downloaded software.[10] The Examining Attorney refused registration of the mark on the ground that this second substitute specimen was insufficient to show trademark use for the goods because "the applied-for mark appears above the screenshots. It does not appear in the title bars of the actual program, nor does it appear on the login or launch screen."[11]

The issue before us is whether the second substitute specimen shows use of the mark AWLVIEW in commerce. A copy of the two-page specimen submitted with the Request for Reconsideration is shown below:

---

[9] August 10, 2016 Office Action.

[10] Applicant maintains that "the same type of specimens" were accepted in connection with its co-pending application for the mark AWLTEK which has since matured into Registration No. 5171959. *See* Applicant's Brief at 3 (7 TTABVUE 4). (Applicant also cites to Exhibit B attached to its Appeal Brief which is a copy of the specimen filed in its co-pending application showing that mark within the launch screen of Applicant's software. However, Exhibit B attached to Applicant's brief has not been considered. Materials not previously made of record during prosecution of the application are untimely if submitted for the first time at briefing. *See* Trademark Rule 2.142(d); 37 C.F.R. § 2.142(d); Trademark Trial and Appeal Board Manual of Procedure § 1203.02(e) (June 2017) (and authorities cited therein)).

In any event, the Board is not bound by the prior decisions of examining attorneys in allowing other marks for registration. It has been noted many times that each case must be decided on its own facts. *See In re Nett Designs Inc.,* 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court."); *see also In re Cordua Rests.*, 823 F.3d 594, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016). We are obligated to assess the registrability of Applicant's mark on its own merits.

[11] May 4, 2017 Request for Reconsideration Denied.

- 6 -



Serial No. 86430215



The first page of the second substitute specimen (the login screen shot) displays the wording "AWLview WMS for Sterling Jewelers" appearing above "AWL Logon WS 202" shown in the title bar of the login page. The second page (the SKU search query page) contains the wording "AWLview WMS for Sterling Jewelers WS 202 - LCM" appearing above "Inventory By SKU Report-WS 202" shown in the title bar of the SKU search query window.

The Examining Attorney argues that the applied-for mark AWLVIEW shown in the substitute specimen appears above or outside of the title bars of the window, and not on the portion of the window that would be viewed by consumers, nor on the login

or launch screen, concluding that the second substitute specimen does not appear to be part of the software display.[12]

Applicant maintains that the second substitute specimen shows the full screen that Applicant's consumers view when they open Applicant's AWLview software, with the mark AWLVIEW appearing in the header just above the login and search query windows shown in the specimen.[13] According to Applicant, the mark is displayed on the login page as well as on other pages of the program viewed by users of its downloaded software, "and would otherwise not be picked up in a 'screenshot.'"[14] By placing its mark atop its login and search pages of its downloadable software, Applicant contends that it has placed the mark in a prominent place to catch the eye of the user/consumer, and thus it serves as a functioning trademark and source identifier.

As noted, an important function of specimens in a trademark application is to provide the USPTO with support for the applicant's verified statements regarding trademark use. Implicit in the definition of a trademark is a requirement that there be a direct association between the mark sought to be registered and the goods specified in the application, that is, that the mark be used in such a manner that it would be readily perceived as identifying the specified goods and distinguishing them from the goods of others. Not every word or combination thereof which appears on or

---

[12] Examining Attorney's Appeal Brief (9 TTABVUE 6).

[13] Applicant's Reply Brief pp. 2-3 (10 TTABVUE 3-4).

[14] Applicant's Appeal Brief p. 4 (7 TTABVUE 5).

in connection with an entity's goods functions as a trademark. *In re Remington Prods. Inc.,* 3 USPQ2d 1714, 1715 (TTAB 1987). The mere fact that a designation appears on the specimens of record does not make it a trademark. *In re Safariland Hunting Corp.*, 24 USPQ2d 1380, 1381 (TTAB 1992).

Because software providers have adopted the practice of applying trademarks that are visible only when the software programs are displayed on a screen, *see* TMEP § 904.03(e)[15], an acceptable specimen might be a photograph or screenshot of a computer screen displaying the identifying trademark while the computer program is in use. The second substitute specimen features screenshots of Applicant's mark appearing on the log-in and search screens viewable by Applicant's customers utilizing the downloaded software. Because the mark appears on the login and search screens of Applicant's downloadable software when the software is in use, we find that the second substitute specimen shows the applied-for mark used in connection with the goods in Class 9 and would be perceived as a trademark identifying the source of those goods.

**Decision**: The refusal to register Applicant's mark AWLVIEW in International Class 9 is reversed.

---

[15] Section 904.03(e) also explains that "[i]t is not necessary that purchasers see the mark prior to purchasing the goods, as long as the mark is applied to the goods or their containers, or to a display associated with the goods, and the goods are sold or transported in commerce. *See, e.g., In re Brown Jordan Co.*, 219 USPQ 375 (TTAB 1983) (holding that stamping the mark after purchase of the goods, on a tag attached to the goods that are later transported in commerce, is sufficient use)."