# United States Court of Appeals for the Federal Circuit

---

## IN RE: NORTH CAROLINA LOTTERY,
*Appellant*

---

2016-2558

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 86/411,401.

---

Decided: August 10, 2017

---

DAVID E. BENNETT, Coats & Bennett, PLLC, Cary, NC, argued for appellant. Also represented by DAVID D. KALISH.

WILLIAM LAMARCA, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Joseph Matal. Also represented by NATHAN K. KELLEY, THOMAS L. CASAGRANDE, CHRISTINA HIEBER.

---

Before Prost, *Chief Judge,* Chen and Hughes, *Circuit Judges.*

PROST, *Chief Judge.*

Appellant North Carolina Lottery ("N.C. Lottery") seeks to register the mark "FIRST TUESDAY" in connec-

tion with lottery services and games, to market the introduction of new scratch-off lottery games on the first Tuesday of each month. It appeals the decision of the U.S. Patent and Trademark Office's ("PTO") Trademark Trial and Appeal Board ("TTAB") denying registration of the mark. We affirm.

## I. BACKGROUND

N.C. Lottery is a state agency that began operating traditional lottery drawing games and instant lottery scratch-off games in North Carolina in 2006. "In order to maintain interest in its instant scratch-off games," it introduces new scratch-off games on the first Tuesday of each month. Appellant's Opening Br. 3. N.C. Lottery asserts that it has continuously used the mark FIRST TUESDAY since July 2013 in print materials, on its Website, and on point-of-sale displays for related advertising.

On October 1, 2014, N.C. Lottery applied for registration of the mark FIRST TUESDAY for "Lottery cards; scratch cards for playing lottery games" and for "Lottery services." J.A. 10–11. It submitted specimens, including the promotional materials reproduced below, that have explanatory text such as "[n]ew scratch-offs" or "[n]ew scratch-offs the first Tuesday of every month."





J.A. 16, 18; *see also* J.A. 17, 19–21. The examining attorney refused registration, finding that the mark used in the context of N.C. Lottery's promotional materials "merely describes a feature of [its] goods and services, namely, new versions of the goods and services are offered the first Tuesday of every month." J.A. 24.

N.C. Lottery appealed to the TTAB, which affirmed the refusal to register. Like the examining attorney, the TTAB reasoned that N.C. Lottery's promotional materials make clear that "new scratch-off games are offered on the first Tuesday of every month" and found that such fact would "be so understood by the relevant consumers who encounter the designation FIRST TUESDAY in the marketplace." J.A. 5–6. It found that "[n]o mental thought or multi-step reasoning is required to reach a conclusion as to the nature of the involved goods and services." J.A. 6.

N.C. Lottery timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

This court reviews the TTAB's conclusions of law de novo and findings of fact for substantial evidence. *See In re Thrifty, Inc.*, 274 F.3d 1349, 1351 (Fed. Cir. 2001). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 964 (Fed. Cir. 2007).

As formulated by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, there are four categories of trademarks that lie along a spectrum. 537 F.2d 4, 10–11 (2d Cir. 1976). When arranged "in an ascending order which roughly reflects their eligibility for trademark status and the degree of protection accorded," these four categories are: generic (or "common" descriptive), merely descriptive, suggestive, and arbitrary (or fanciful) marks. *Id.*; *see also In re Chippendales USA, Inc.*, 622 F.3d 1346, 1350–51 (Fed. Cir. 2010) (citing *Abercrombie* for the four categories of marks). Relevant to this case, marks that are merely descriptive cannot be registered unless they acquire secondary meaning under § 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), but marks that are suggestive are "inherently distinctive" and can be registered. *Chippendales*, 622 F.3d at 1351. A mark is merely descriptive if it immediately conveys information concerning a feature, quality, or characteristic of the goods or services for which registration is sought. *Bayer*, 488 F.3d at 963. In contrast, "a suggestive mark requires imagination, thought and perception to reach a conclusion" about the nature of the goods or services. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012) (internal quotation marks omitted).

N.C. Lottery asks us to reverse the TTAB's conclusion that the mark FIRST TUESDAY is merely descriptive.[1] Specifically, it argues that the TTAB erred as a matter of law by relying on the explanatory text of the specimens to supplement the meaning of the mark itself. Instead, it contends that the inquiry should be limited to what a consumer with "only general knowledge" of N.C. Lottery's goods and services, and without additional context from the explanatory text, would immediately understand the mark to mean. Appellant's Reply Br. 1. Working from that premise, N.C. Lottery argues that "there is nothing in the words 'first Tuesday' that conveys th[e] complete understanding which the Director [of the PTO] attributes to the mark itself." *Id.* at 4–5. Rather, "some imagination is needed in order to connect the mark FIRST TUESDAY with [its] goods and services," such that the mark is suggestive and eligible for registration.[2] Appellant's Opening Br. 7.

We begin with N.C. Lottery's argument regarding the role of explanatory text. We review this legal argument de novo. *Thrifty*, 274 F.3d at 1351. N.C. Lottery concedes that for purposes of analyzing descriptiveness, this court's precedent allows consideration of specimens, such as advertising materials, showing how a mark is used. *See, e.g.*, Appellant's Reply Br. 1 ("Nor has N.C. Lottery argued that [its] advertising is irrelevant to the question of descriptiveness."); Oral Arg. 2:28–2:40, 7:02–7:12,

---

[1] N.C. Lottery does not argue in the alternative that the mark is eligible for registration on the basis that, even if it is merely descriptive, it has acquired distinctiveness through secondary meaning. We therefore do not address secondary meaning.

[2] N.C. Lottery does not dispute that the timing of when new scratch-off lottery games are offered is a feature or characteristic of its goods or services.

http://oralarguments.cafc.uscourts.gov/mp3/2016-2558.
mp3 (same).  But it argues that any explanatory text in
such specimens cannot supply additional meaning to a
mark when "the mark itself does not convey that mean-
ing."  Appellant's Reply Br. 1–2; *see also* Oral Arg. 11:54–
12:05 (arguing that explanatory text need not be consid-
ered).  At bottom, N.C. Lottery contends that one must
consider the specimens as if they did not include the ex-
planatory text.  Oral Arg. 9:09–9:17 ("Had that explanato-
ry text not been on the specimen, no one I don't think
would ever, ever guess what that mark meant."); *id.* at
9:42–9:52 ("My point is that without that explanation, the
connection between the mark and the goods you can't
make.").

As the PTO argues, the TTAB "must consider a mark
in its commercial context to determine the public's percep-
tion."  Appellee's Br. 9–10 (citing *In re Nett Designs*, 236
F.3d 1339, 1342 (Fed. Cir. 2001); *In re Abcor Dev. Corp.*,
588 F.2d 811, 814 (C.C.P.A. 1798)).  This court has ex-
plained that the public's understanding of a mark can be
evidenced by "[a]ny competent source."  *Nett Designs*, 236
F.3d at 1341; *see also DuoProSS*, 695 F.3d at 1254 ("[T]he
question is whether someone who knows what the goods
and services are will understand the mark to convey in-
formation about them.").  These sources may include
Websites, publications, and use "in labels, packages, or in
advertising material directed to the goods."  *Abcor*, 588
F.2d at 814; *see also Nett Designs*, 236 F.3d at 1342 (rely-
ing on advertising brochure statements).  At oral argu-
ment, N.C. Lottery all but conceded that the analysis of
descriptiveness should not completely "ignore the expla-
nation in the specimen," but it had difficulty articulating
the significance of the explanatory text in this case if not
to serve as evidence of the significance of FIRST TUES-
DAY in the commercial context.  Oral Arg. 7:02–9:57.  We
have not carved out the explanatory text in such materi-

als from supplying commercial context and decline to do so today.

That is not to say, however, that the use of explanatory text with a mark necessarily renders that mark merely descriptive. "Placement of a term on the continuum [of distinctiveness] is a question of fact." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001). The distinctiveness of a mark in the context of explanatory text remains a case-specific analysis. As a legal matter, however, the TTAB did not err by considering the explanatory text of the specimens in the descriptiveness inquiry.

Turning next to the impact of the explanatory text in this particular case, N.C. Lottery argues that "the fact that N.C. Lottery found it necessary to explain the connection between the mark and [its] goods and services shows that the mark is not descriptive." Appellant's Opening Br. 8. It relies on cases such as *Tumblebus Inc. v. Cranmer*, 399 F.3d 754 (6th Cir. 2005), and *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150 (4th Cir. 2014), as examples where courts have relied in part on explanatory text to find that a mark was not merely descriptive. Appellant's Opening Br. 10–12. But not only are these cases not binding on this court, they are also distinguishable.

In *Tumblebus*, the Sixth Circuit held that the mark "TUMBLEBUS"—for mobile gymnastics instruction services—was suggestive, not merely descriptive, based in part on "the fact that Tumblebus, Inc. has found it necessary to include explanatory phrases such as 'Gym On Wheels' in its advertising material." 399 F.3d at 759. And in *Swatch*, the Fourth Circuit affirmed a finding that the mark "SWAP"—for watches with interchangeable faces and bands—was suggestive because "[e]xplaining the function of [defendant's] product" through promotional materials containing diagrams, arrows, and text, evi-

denced the need for "a further leap." 739 F.3d at 157 (internal quotation marks omitted) (first alteration in original). As the PTO points out, however, the connection between the mark FIRST TUESDAY and its reference to when new scratch-off lottery games are being offered is much closer and more straightforward than the connection between TUMBLEBUS and its reference to mobile gymnastics instruction, or the connection between SWAP and its reference to watches with interchangeable components. Understanding that FIRST TUESDAY refers to a new good or service being offered on the first Tuesday of a month requires much less of a mental leap than that which was required in *Tumblebus* and *Swatch*.

On the record of this case, we agree with the PTO that substantial evidence supports the TTAB's finding of mere descriptiveness. As N.C. Lottery concedes, the explanatory text accompanying the mark FIRST TUESDAY is not complicated. Oral Arg. 24:05–24:10. That text simply uses the same two words as the mark—"first Tuesday"—along with words like "new" and "every month" to describe the relevant feature or characteristic of N.C. Lottery's scratch-off lottery games. The commercial context here demonstrates that a consumer would immediately understand the intended meaning of FIRST TUESDAY. In other words, the evidence shows that the mark is less an identifier of the source of goods or services and more a description of a feature or characteristic of those goods or services. Substantial evidence therefore supports the TTAB's finding that FIRST TUESDAY is a merely descriptive mark.

## III. CONCLUSION

For the foregoing reasons, we affirm the TTAB's decision refusing to register the mark FIRST TUESDAY.

**AFFIRMED**