This Opinion is a
Precedent of the TTAB

Mailed: October 21, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re James S. Fallon*

_____

Serial No. 86882668

_____

Morland C. Fischer of Law Offices of Morland C. Fischer,
    for James S. Fallon.

Christopher Buongiorno, Trademark Examining Attorney, Law Office 102,
    Mitchell Front, Managing Attorney.

_____

Before Kuczma, Larkin, and Coggins,
    Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

James S. Fallon ("Applicant") seeks registration on the Principal Register of the proposed standard character mark THERMAL MATRIX (THERMAL disclaimed) for goods ultimately identified as a "Heat responsive and malleable liner that is an integral component of an oral dental appliance used in the mouth and worn over the teeth of an individual while sleeping to reduce the effects of snoring and sleep apnea," in International Class 10.[1]

---

[1] Application Serial No. 86882668 was filed on January 21, 2016 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), on the basis of Applicant's allegation of a bona fide

The Trademark Examining Attorney initially issued three refusals of registration of Applicant's mark under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, all based on the claimed insufficiency of the specimen of use submitted with Applicant's Statement of Use, which is depicted below:[2]



The first refusal was that "the specimen does not show the applied-for mark in use in commerce with a liner that is an integral component of an oral dental appliance"

---

intention to use the mark in commerce. As discussed below, following publication of the application for opposition, Applicant filed a Statement of Use supported by a specimen of use.

[2] In his initial appeal brief, Applicant claimed that this appeal "has facts and issues that are similar to those" in Applicant's appeal in Application Serial No. 86915495, and suggested that "for purposes of efficiency, both appeals could be decided at the same time." 4 TTABVUE 1. That request is now moot because the refusal to register in Application Serial No. 86915495 has been affirmed.

[3] As discussed below, the specimen as submitted by Applicant has relatively poor resolution.

because "the package displays the proposed mark without any reference to the liner so that consumers would associate the mark with a liner."[4] The second refusal was that "the applied-for mark, as used on the specimen of record, [fails to] function as a trademark to indicate the source of applicant's goods and to identify and distinguish them from others."[5] The third refusal was that "the specimen does not show the applied-for mark in the drawing in use in commerce" because "the specimen displays the mark as NEW Thermal Matrix [and] the drawing displays the mark as THERMAL MATRIX."[6]

After Applicant appealed, and he and the Examining Attorney filed briefs regarding these three refusals, the Examining Attorney requested a remand of the application to issue a fourth refusal that the proposed mark is "merely descriptive" of the goods within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). 8 TTABVUE 1.[7] The Board granted that request, 9 TTABVUE 2, and remanded the application to the Examining Attorney, who issued the new mere

---

[4] September 29, 2017 Final Office Action at 1. All citations in this opinion to the record, both before appeal and following the remand discussed below, are to pages from the Trademark Status & Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO"). The May 3, 2017 Office Action initially rejecting the specimen stated that Applicant could submit a new drawing of the mark that agreed with the mark on the specimen, or a substitute specimen, but Applicant elected to do neither.

[5] September 29, 2017 Final Office Action at TSDR 1.

[6] *Id.*

[7] Citations in this opinion to the briefs and the remand request refer to TTABVUE, the Board's online docketing system. *Turdin v. Tribolite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). Specifically, the number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page number(s) of the docket entry where the cited materials appear.

descriptiveness refusal. After Applicant responded to the new refusal,[8] the Examining Attorney made that refusal final,[9] and the appeal was resumed. 11 TTABVUE. Applicant and the Examining Attorney subsequently filed supplemental briefs directed to the mere descriptiveness refusal. 12 TTABVUE; 14 TTABVUE.

We affirm the specimen and mere descriptiveness refusals, and reverse the refusal based on disagreement between the mark shown in the drawing and the mark shown on the specimen. We do not reach the failure-to-function refusal. *See In re Soc'y of Health and Physical Educators*, 127 USPQ2d 1584, 1590 (TTAB 2018).

## I.  Record on Appeal and Evidentiary Issue

In the Office Action making final the initial three refusals to register, the Examining Attorney made of record a page from the website at dynaflex.com on which one of Applicant's apparent competitors displays what the website describes as a "thermal acrylic liner" as part of its "DynaFlex Dorsal Device."[10] In the Office Action asserting the new mere descriptiveness refusal, the Examining Attorney made of record a dictionary definition of the word "matrix,"[11] and Internet webpages discussing Applicant's goods as well as the term "thermal matrix" as used in connection with Applicant's goods.[12] In the Office Action making final the descriptiveness refusal, the Examining Attorney made of record additional webpages

---

[8] November 12, 2019 Response to Office Action at TSDR 1.

[9] December 2, 2019 Final Office Action at TSDR 1.

[10] September 29, 2017 Final Office Action at TSDR 2.

[11] May 22, 2019 Office Action at TSDR 2-3 (MERRIAM-WEBSTER DICTIONARY).

[12] *Id*. at TSDR 3, 5-6.

regarding the use of the term "thermal matrix" in connection with Applicant's goods, including pages from third-party websites and pages from Applicant's website at snorerx.com.[13]

Before proceeding to the merits of the four refusals, we address an evidentiary matter. Applicant attached to his initial appeal brief what he describes as "a copy of a drawing from the applicant's pending U.S. Patent Application No. 15/229,715, filed August 5, 2016." 4 TTABVUE 4. Applicant states that he submitted the patent drawing "as extrinsic evidence of the visible nature of the applicant's liner (i.e., solely for the purpose of clarity)" and that the drawing "illustrates an oral dental appliance which is substantially identical to the oral dental appliance that is pictured on the applicant's package." *Id.* The Examining Attorney objects in his initial brief to the patent drawing on the grounds that it was not previously made of record, and that Applicant "has not established the relevancy of a patent document that is not readily available to consumers when viewing product packaging." 6 TTABVUE 4. We sustain the objection on the untimeliness ground.[14]

Rule 2.142(d) of the Trademark Rules of Practice, 37 C.F.R. § 2.142(d), provides in pertinent part that the "record in an application should be complete prior to the

---

[13] December 2, 2019 Final Office Action at TSDR 2-7.

[14] The Examining Attorney's second ground involves the probative value of the patent drawing if it were deemed to be part of the record. To the extent that this ground is an evidentiary objection at all, it is mooted by our exclusion of the drawing. In any event, as discussed below, we must assess the sufficiency of Applicant's specimen primarily by resort to the specimen itself, because the specimen must show a direct association of the proposed mark with the goods for which registration is sought. Materials other than the specimen that are not exposed to the consuming public when viewing the product may not be probative of whether the use of the mark on the specimen creates such an association.

filing of an appeal," that "[e]vidence should not be filed with the Board after the filing of a notice of appeal," and that if an appellant "desires to introduce additional evidence after an appeal is filed, the appellant . . . should submit a request to the Board to suspend the appeal and to remand the application for further examination." The patent drawing was available to Applicant for submission during prosecution if Applicant wished to make it of record, and Applicant did not request a remand to submit it post-appeal. The submission of the patent drawing with Applicant's appeal brief is untimely, and we have given the patent drawing no consideration in our decision. *In re Jimmy Moore, LLC*, 119 USPQ2d 1764, 1766-67 (TTAB 2016) (excluding as untimely the first page of the applicant's patent submitted with its appeal brief).

## II.    Analysis of Refusals

"An application initially based on Trademark Act Section 1(b) must, upon the filing of . . . a statement of use under Section 1(d), include one specimen showing the applied-for mark in use in commerce, on or in connection with those goods or services identified in the application . . . ." *In re Florists' Transworld Delivery, Inc.*, 119 USPQ2d 1056, 1062 (TTAB 2016). "A trademark specimen must show use of the mark on the goods, on containers or packaging for the goods, on labels or tags affixed to the goods, or on a display associated with the goods." Trademark Rule 2.56(b)(1), 37 C.F.R. § 2.56(b)(1).[15] Applicant submitted a photograph of a package, i.e., a "container

---

[15] *See also* Trademark Act Section 45, 15 U.S.C. § 1127: "a mark shall be deemed to be in use in commerce . . . on goods when . . . it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature

for the goods," as a specimen of use, and the Examining Attorney does not dispute that the packaging is an appropriate specimen type under Trademark Rule 2.56(b)(1). Instead, the Examining Attorney bases the initial three refusals on the manner in which the proposed mark is used on the package. He bases the fourth refusal (i.e., mere descriptiveness) on evidence other than the specimen, which he argues shows the descriptive significance of the proposed mark in relation to the goods.

### A. Whether the Specimen Shows the Mark Used in Connection With the Goods Identified in the Application

The Examining Attorney first argues that the specimen "does not show the mark used in a manner that would be perceived by potential purchasers as identifying applicant's specific goods and indicating the source of the goods." 6 TTABVUE 4. In particular, he argues that

> The picture of the dental appliance on the package does not show or highlight the lining of the dental appliance in a way where consumers are likely to associate the wording in the mark as the source indicator for a liner. The only component shown in the picture that is discernable from the rest of the appliance is the part that is colored black with a downward white arrow and the term "SQUEEZE" appearing in white. Other than this one particular component, the picture of the dental appliance shown on the package does not call to attention any other components because it is presented as a single mold.

*Id.* at 4-5. The Examining Attorney contrasts the depiction of the liner on Applicant's specimen with "the display of another liner for a competitor's product that is very similar to applicant's dental appliance," on which display he claims that "the liner is

---

of the goods makes such placement impracticable, then on documents associated with the goods or their sale."

clearly visible and shown as a component of a dental appliance." *Id.* at 5. We depict below the portion of the webpage in the record to which the Examining Attorney refers:



The Examining Attorney concludes that it "would have been very simple to make a reference to the liner or highlight it in some manner where prospective customers would unquestionably associate the wording THERMAL MATRIX with a liner," but that it "cannot be said that applicant achieved such an association with the [specimen]" because "the picture of the appliance on the package lacks sufficient clarity to illustrate any liner component." *Id.* at 5-6.

Applicant argues that his "applied-for mark is particularly positioned on [his specimen] so as to lie alongside the pictured oral dental appliance and adjacent the integral liner," 4 TTABVUE 2, that the "liner which is an integral part of the applicant's oral dental appliance is <u>clearly visible</u> on the [specimen]," and that the

---

[16] September 29, 2017 Final Office Action at TSDR 2 (emphasis supplied by the Examining Attorney).

proposed mark "is strategically located on the packaging so as to be positioned immediately adjacent the appliance and [to] lie as close as is practicable to the liner that is shown running along the top thereof." *Id.* at 4.

Neither Applicant nor the Examining Attorney discusses the standard for determining when a proposed mark is associated on a specimen with the goods for which registration is sought.[17] The predecessor of our primary reviewing court has made clear that "the manner in which an applicant has employed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used as a trademark **with respect to the goods named in the application**." *In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 216 (CCPA 1976) (emphasis added). In *Bose*, the court affirmed the refusal because the specimen depicted that the mark was used on the applicant's loudspeaker-testing computer, not on "loudspeaker systems," which were the identified goods. *Id.* Similarly, the court in *In re Griffin Pollution Control Corp.*, 517 F.2d 1356, 186 USPQ 166 (CCPA 1975), affirmed the refusal to register OXINITE for a "mixture of gases used in a sewage treatment process" because the specimen showed that what the applicant was commercializing was not the gases themselves, but an apparatus that produced the gases. 186 USPQ at 167. In this regard, we have previously said that

---

[17] The Examining Attorney cites no cases in support of this refusal, 6 TTABVUE 4-6, while Applicant cites *In re Remington Prods., Inc.*, 3 USPQ2d 1714 (TTAB 1987), in arguing that the use of THERMAL MATRIX on his specimen was "calculated to project to purchasers or potential purchasers a single source or origin for" his goods. 4 TTABVUE 4. *Remington* is inapposite because it held that the term PROUDLY MADE IN USA did not function as a mark for electric shavers because it was merely an informational slogan. 3 USPQ2d at 1715. The question here is whether the mark is associated with the applied-for goods.

"[i]mplicit in the definition of a trademark is a requirement that there be a direct association between the mark sought to be registered and the goods specified in the application, that is, that the mark be used in such a manner that it would be readily perceived as identifying the specified goods and distinguishing a single source or origin for the goods." *In re Minerva Assocs., Inc.*, 125 USPQ2d 1634, 1638 (TTAB 2018). "The mere fact that a designation appears on the specimens of record does not make it a trademark." *Id.* at 1639.

Under this standard, we must determine whether the mark as it appears on Applicant's specimen would be readily perceived as identifying a "heat responsive and malleable liner that is an integral component of an oral dental appliance used within the mouth and worn over the teeth of an individual while sleeping to reduce the effects of snoring and sleep apnea," as the goods are ultimately described in the application. The manner in which Applicant "has employed [his] asserted mark, as evidenced by the [specimen] of record, must be carefully considered in determining whether the asserted mark has been used as a trademark with respect to the goods identified in the application." *Id.* at 1636. We "may also consider other evidence bearing on the question of what impact applicant's use is likely to have on purchasers and potential purchasers." *In re Safariland Hunting Corp.*, 24 USPQ2d 1380, 1381 (TTAB 1992).

Applicant's specimen displays a picture that shows the entire oral dental appliance in which the liner is contained, but the liner for which registration is sought is a component that is distinct from the entire appliance that is shown on the

specimen. The Examining Attorney, however, does not contend that Applicant's mark identifies the appliance itself rather than the liner component. *Cf.* TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") Section 1402.05(a) (Oct. 2018) (when the goods identified in an application are only a component or ingredient of a product, "[t]he examining attorney should examine the specimen to determine whether it shows use of the mark to identify the separate component or ingredient or the finished product in its entirety" because such components or ingredients are classified in the class of the finished product). Instead, the Examining Attorney essentially claims that the mark on the specimen does not identify the component itself. We agree.

Specimens for goods and services must embody "something which creates in the mind of the purchaser an association between the mark and the [identified goods or services] . . . ." *In re WAY Media, Inc.*, 118 USPQ2d 1697, 1698 (TTAB 2016) (quoting *In re Johnson Controls, Inc.*, 33 USPQ2d 1318, 1320 (TTAB 1994)). The specimen here displays the registered SNORE Rx® mark at the top of the package, above the tagline "The Prescription for Snoring" and a picture of the appliance. Given the relative size and positioning of the SNORE Rx mark, it is that mark that will be viewed as identifying the appliance itself.

The specimen also displays the words "Thermal Matrix™" beneath the word "NEW," all within a sunburst or gold seal, which is positioned at one end of the appliance:



The positioning of the words "Thermal Matrix" within the sunburst, the presence of the descriptive term "NEW" above "Thermal Matrix,"[18] and "the 'use of the designation '™,' [which] lends a degree of visual prominence to the term,'" *In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1124 (Fed. Cir. 2009) (quoting *In re Dell, Inc.*, 71 USPQ2d 1725, 1729 (TTAB 2004)), combine to suggest Applicant's intention to use THERMAL MATRIX as a mark for some "new" feature of the appliance, but the issue is whether the proposed mark THERMAL MATRIX creates "in the mind of the purchaser an association between the mark" and the specific liner component for which registration is sought. *WAY Media*, 118 USPQ2d at 1698.

Where, as here, an applicant seeks registration for a component of a product rather than for the product itself, it is particularly important that the specimen contain some visual or verbal identification of the component to create the required direct association between the mark and the identified goods. *See Minerva Assocs.*, 125 USPQ2d at 1638-39 (a mark must "be used in such a manner that it would be

---

[18] We discuss below the Examining Attorney's separate refusal based on the claim that the drawing of the applied-for mark THERMAL MATRIX is not a substantially exact representation of the mark as actually used because that mark is "NEW Thermal Matrix."

readily perceived as identifying the specified goods and distinguishing them from the goods of others."). The use of the proposed mark in a separate display of the liner component would create the direct association, but it is not necessary so long as there is "something which creates in the mind of the purchaser an association between the mark and the [component] . . . ." *WAY Media*, 118 USPQ2d at 1698.

We agree with the Examining Attorney that Applicant did not make a sufficient "reference to the liner or highlight it in some manner where prospective customers would unquestionably associate the wording THERMAL MATRIX with [the] liner." 6 TTABVUE 5. The specimen that Applicant submitted does not sufficiently identify any specific component, much less the component for which registration is sought, visually or verbally, to create the required direct association between the proposed mark and that component. We affirm the refusal to register on the ground that the specimen does not show the mark used in commerce in connection with the goods identified in the application.

## B.   Whether the Mark on the Specimen is a Substantially Exact Representation of the Mark as Shown in the Drawing

As noted above, the Examining Attorney also refused registration because the mark depicted on the specimen is NEW THERMAL MATRIX, not THERMAL MATRIX, as depicted in the drawing. *See* Trademark Rule 2.52, 37 C.F.R. § 2.52 (the drawing of a mark in an application "depicts the mark sought to be registered"). As a result, according to the Examining Attorney, the specimen runs afoul of the requirement of Trademark Rule 2.51(b), 37 C.F.R. § 2.51(b), that "[i]n an application under section 1(b) of the Act . . . once a statement of use under § 2.88 has been filed,

the drawing of the mark must be a substantially exact representation of the mark as used with the goods . . . ." The drawing here depicts the proposed THERMAL MATRIX mark in standard characters. For ease of reference in following our analysis of this refusal, we depict below how the words THERMAL MATRIX appear on Applicant's specimen:



Specifically, the Examining Attorney argues that the "specimen displays the mark as 'NEW Thermal Matrix' and the drawing displays the mark as THERMAL MATRIX," that the "term 'NEW' is descriptive but not a generic word" and that it "modifies the wording THERMAL MATRIX," and that "the term NEW will not be read as a separate word," but rather "will be read in conjunction with THERMAL MATRIX because it functions as an adjective for the wording THERMAL MATRIX." 6 TTABVUE 7.

Applicant argues that "consumers are not likely to believe that the highly descriptive (i.e., laudatory) word 'NEW' as printed on the applicant's packaging is part of the applied for mark THERMAL MATRIX" because "the letter size and style of the word 'NEW' are visually distinguishable from those of the words 'Thermal Matrix' which are located separately on the package." 4 TTABVUE 5. We agree with Applicant.

In *In re Yale Sportswear Co.*, 88 USPQ2d 1121, 1122-23 (TTAB 2008), the Board observed that the principle under Trademark Rule 2.51(b) that "if the drawing includes less than the mark which is actually used, registration must be refused" raises "an obvious question: what mark is applicant actually using?" The Board held that the "answer is sometimes not clear, because it is not at all unusual for specimens to comprise multiple trademarks, artwork, and other matter, whether registrable or not." *Id.* The Board noted that "it is up to the applicant to choose what it seeks to register," but that "what applicant seeks to register must not only be in use, it must make a distinct commercial impression as used." *Id.* at 1123 (citing *In re 1175856 Ontario Ltd.*, 81 USPQ2d 1446, 1448 (TTAB 2006) ("[I]t is well settled that an applicant may seek to register any portion of a composite mark if that portion presents a separate and distinct commercial impression")). *Yale Sportswear* candidly acknowledged that "'it all boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct 'trademark' in and of itself,'" *id.* (quoting *Institut Nat'l Des Appellations d'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 22 USPQ2d 1190, 1197 (Fed. 1992)), and found that the proposed mark UPPER 90 did not make a separate and distinct commercial impression from the term UPPER 90° that appeared on the applicant's specimen. *Id.* at 1123-24.

We find here that the proposed mark THERMAL MATRIX "comprises a separate and distinct 'trademark' in and of itself,'" *id.* at 1123, as it appears on Applicant's specimen. The word NEW appears in all capital letters on the specimen above the words "Thermal Matrix," which are depicted in initial capital letters and are followed

by the ™ symbol. Given the descriptive, non-source identifying nature of the word NEW acknowledged by the Examining Attorney and Applicant, and the fact that the words "Thermal Matrix" are set apart visually from the word NEW, we find that the drawing of the mark as THERMAL MATRIX is "a substantially exact representation of the mark as used with the goods," Trademark Rule 2.51(b), and we reverse the refusal to register based on that rule.

## C. Whether the Mark is Merely Descriptive

### 1. Applicable Law

Section 2(e)(1) of the Trademark Act prohibits registration on the Principal Register of "a mark which, (1) when used on or in connection with the goods of the applicant is merely descriptive . . . of them," unless the mark has acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f).[19] "A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services." *In re Canine Caviar Pet Foods, Inc.*, 126 USPQ2d 1590, 1598 (TTAB 2018) (citing *In re Chamber of Commerce of the U.S.,* 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); and *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978)).

---

[19] Applicant does not claim that if THERMAL MATRIX is found to be merely descriptive, it is registrable because it has acquired distinctiveness.

"A mark need not immediately convey an idea of each and every specific feature of the goods in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of the goods." *In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1513 (TTAB 2016) (citing *Gyulay*, 3 USPQ2d at 1010).

Whether a mark is merely descriptive is "evaluated 'in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use,'" *Chamber of Commerce*, 102 USPQ2d at 1219 (quoting *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)), and "not in the abstract or on the basis of guesswork." *Fat Boys*, 118 USPQ2d at 1513 (citing *Abcor Dev.*, 200 USPQ at 218). We ask "whether someone who knows what the goods and services are will understand the mark to convey information about them." *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 128 USPQ2d 1370, 1374 (Fed. Cir. 2018) (quoting *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012) (internal quotation omitted)). A mark is suggestive, and not merely descriptive, if it requires imagination, thought, and perception on the part of someone who knows what the goods are to reach a conclusion about their nature from the mark. *See, e.g.*, *Fat Boys*, 118 USPQ2d at 1515.

Applicant's proposed mark consists of the words THERMAL and MATRIX. We "must consider the *commercial impression* of a mark as a whole." *Real Foods*, 128 USPQ2d at 1374 (quoting *DuoProSS,* 103 USPQ2d at 1757 (citation omitted)). "In

considering [a] mark as a whole, [we] 'may not dissect the mark into isolated elements,' without 'consider[ing] . . . the entire mark,'" *id.* (quoting *DuoProSS*, 103 USPQ2d at 1757), but we "may weigh the individual components of the mark to determine the overall impression or the descriptiveness of the mark and its various components." *Id.* (quoting *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370, 1372 (Fed. Cir. 2004)). Indeed, we are "required to examine the meaning of each component individually, and then determine whether the mark as a whole is merely descriptive." *DuoProSS*, 103 USPQ2d at 1758.

If the words in the proposed mark are individually descriptive of the identified goods, we must then determine whether their combination "conveys any distinctive source-identifying impression contrary to the descriptiveness of the individual parts." *Fat Boys*, 118 USPQ2d at 1515-16 (quoting *Oppedahl & Larson*, 71 USPQ2d at 1372). If each word instead "retains its merely descriptive significance in relation to the goods, the combination results in a composite that is itself merely descriptive." *Id.* at 1516 (citing *In re Tower Tech., Inc.*, 64 USPQ2d 1314, 1317-18 (TTAB 2002)); *see also In re Mecca Grade Growers, LLC*, 125 USPQ2d 1950, 1953-55 (TTAB 2018).

"Evidence of the public's understanding of [a] term . . . may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers[,] and other publications." *Real Foods*, 128 USPQ2d at 1374 (quoting *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1046 (Fed. Cir. 2018)). "These sources may include [w]ebsites, publications and use 'in labels, packages, or in advertising material directed to the

goods.'" *In re N.C. Lottery*, 866 F.3d 1363, 123 USPQ2d 1707, 1710 (Fed. Cir. 2017) (quoting *Abcor Dev.*, 200 USPQ at 218). *See also In re Omniome, Inc.*, 2020 USPQ2d 3222, *5 (TTAB 2019) (cataloging sources of evidence of descriptiveness).

"It is the Examining Attorney's burden to show, *prima facie*, that a mark is merely descriptive of an applicant's goods or services." *Fat Boys*, 118 USPQ2d at 1513 (citing *Gyulay*, 3 USPQ2d at 1010). "If such a showing is made, the burden of rebuttal shifts to the applicant." *Id.* (citing *In re Pacer Tech.*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003)). "The Board resolves doubts as to the mere descriptiveness of a mark in favor of the applicant." *Id.*

### 2. Summary of Arguments

Applicant argues that "the Examining Attorney has reached his conclusion that THERMAL MATRIX is merely descriptive of a feature or characteristic of the applicant's goods entirely in the abstract." 12 TTABVUE 3. Applicant "admits that 'thermal' and 'matrix' have dictionary definitions and that he has disclaimed the descriptive word 'thermal,'" but contends that "the Examining Attorney has focused entirely on the meanings of the individual words 'thermal' and 'matrix' while overlooking the significance of the mark THERMAL MATRIX <u>taken as a whole</u>." *Id.* at 4.

Applicant further argues that "[t]here is simply no direct relationship between the words 'thermal' and 'matrix' that would enable a potential purchaser to appreciate or understand a feature or characteristic of the applicant's goods as being an integral liner of an oral dental appliance." *Id.* He concedes that "the individual words 'thermal' and 'matrix' may be descriptive and unregisterable [sic] in and of themselves," *id.* at

4-5, but argues that "the compound mark THERMAL MATRIX creates a new and different commercial impression that imparts a meaning which can function as an indication of more than a mere description of a feature or characteristic of the applicant's heat responsive and malleable liner for an oral dental appliance." *Id.* at 5.

Applicant also contends that in his mark, "normally descriptive words like 'matrix' have been combined to create an unusual or unique combination when applied to the applicant's goods." *Id.* According to Applicant, "nothing from the dictionary definition [in the record] would lead consumers to believe that the totally innocuous word 'matrix' is in some way associated with an oral dental appliance," and that "other than vague references thereto made by the applicant in his advertising, the Examining Attorney has provided no evidence to show that 'thermal matrix' would or could be understood by consumers to refer to a liner for a dental appliance." *Id.*

Applicant concludes that "rather than being merely descriptive . . . the applied for mark THERMAL MATRIX is otherwise arbitrary and fanciful and readily able to distinguish the applicant's dental appliance having an integral heat responsive and malleable liner from the oral appliances of his competitors." *Id.*

The Examining Attorney responds that the "wording THERMAL MATRIX is merely a combination of two descriptive terms." 14 TTABVUE 5. He notes that Applicant disclaimed the exclusive right to use THERMAL apart from the mark as shown during prosecution, and argues that the "evidence shows the applicant uses the word 'matrix' to describe a design feature of the liner of the dental appliance." *Id.*

He cites a dictionary definition of "matrix" as "'something shaped like a pattern of lines and spaces,'" *id.*,[20] and argues that the "record includes actual marketing and promotional evidence which shows the word 'matrix' used to describe the design feature of applicant's liner." *Id.* The pertinent portions of the cited materials include the following (all highlighting was supplied by the Examining Attorney):



[21]

---

[20] May 22, 2019 Office Action at TSDR 2 (MERRIAM-WEBSTER DICTIONARY).

[21] *Id.* at TSDR 3 (SnoreLab website).



---

[22] *Id*. at TSDR 4 (tuck.com).



**Thermal Matrix Design**

SnoreRx's unique design features a thermal matrix material that enables each user to personalize their device with a custom impression. [23]

# SnoreRx has multiple features

Medical professionals recommend oral appliances be designed with a custom impression to prevent tooth movement. Three core features to look for when purchasing an anti-snore device: custom impression, compliance with medical standards, and adjustability.

| | SNORERx | zQuiet® | Zyppah® | Pure Sleep® | GMSS® |
|---|---|---|---|---|---|
| **Adjustable in 1mm increments** <br> Same reason for many shoe sizes | | | | | |
| **Ability to Reset Adjustment** <br> Ability to reset the adjustment at any time without tools | | | | | |
| **Thermal Matrix Design** <br> Custom impression delivers maximum comfort | | | | | |
| **Built In Calibrator** <br> Clearly displays setting selected and reference point to indicate adjustment setting | | | | | |
| **Prevents Constant Pressure or Torsion** <br> Constant torsion can lead to pain and tendonitis | | | | | |
| **Meets and Exceeds Medical Standards** <br> Dental lab quality design with advanced safety features | | | | | |
| **Non Prescription** <br> Based on safety and clinical effectiveness FDA rated as non prescription | | | | | |

[24]

---

[23] *Id*. at TSDR 5 (amazon.com).

[24] *Id*. at TSDR 6 (Apnea Sciences website).



**Thermal Matrix Design**

SnoreRx design features a thermal matrix material that enables each user to personalize their device with a custom impression. The custom impression process is a simple step by step process that can be done in the comfort of your home.



## SnoreRx Stop Snoring Oral Appliance

If customization is what you are looking for for your anti-snoring mouthpiece, then the SnoreRx Oral Appliance might be the right product for you.

**Check Latest Price**

You have full control over the amount of jaw advancement this mouthpiece can give you. It has an easy to read calibrator so you can make accurate adjustments at one-millimeter intervals. With controls as precise as this, you can create a fit that's both effective and comfortable.

The device's comfort level is further enhanced by its thermal matrix design. You can personalize the SnoreRx to fit exactly your mouth since you'll be making your own dental impression for a custom fit by heating up the mouthpiece making it pliable.

Breathing is also easier with the SnoreRx Oral Appliance. It has an open front design that maximizes airflow, making it suitable even for mouth breathers.

---

[25] *Id.*

[26] December 2, 2019 Final Office Action at TSDR 2 (Well Aware Systems website).

On the basis of these materials, the Examining Attorney argues:

> One of the prominent features of applicant's oral appliances touted in various advertising materials is the ability of each user to personalize their device with a custom impression. It is this matrix design which permits the personalization of the liner through the use of heat which achieves the custom impression. Consumers viewing the wording THERMAL MATRIX used in connection with a "heat responsive and malleable liner," that is marketed and described as having a matrix design, will perceive the wording in the mark for its descriptive meaning and not for its source indicating significance; especially when the wording is used to describe a feature of the goods within various promotional materials.

14 TTABVUE 9.

The Examining Attorney also argues that "Applicant has not provided a sufficient explanation on how the combination of the terms THERMAL and MATRIX creates a unitary mark with a unique, incongruous, or otherwise nondescriptive meaning in relation to the goods," *id.* at 8, and that Applicant "did not assert exactly what is the meaning conveyed by combining THERMAL with MATRIX." *Id.* at 9.

### 3. Analysis of Refusal

As discussed above, we assess the descriptiveness of each element of the proposed mark singly and then in combination. Applicant all but admits that each word in the proposed mark is individually descriptive of his identified goods. He concedes that "the individual words 'thermal' and 'matrix' may be descriptive and unregisterable [sic] in and of themselves," 12 TTABVUE 4-5, and "admits that 'thermal' and 'matrix' have dictionary definitions and that he has disclaimed the descriptive word 'thermal.'" *Id.* at 4. The disclaimed word "thermal" means "of, relating to, or caused

by heat,"[27] while the noun "matrix" means, inter alia, "something within or from which something else originates, develops, or takes form," and "something shaped like a pattern of lines and spaces."[28] As shown in the webpages above, Applicant's "heat responsive and malleable liner" embodies "a pattern of lines and spaces" through which the user can personalize the fit of the oral appliance through the application of heat. We find that each word is highly descriptive of the goods.

We turn now to consideration of whether the proposed THERMAL MATRIX mark as a whole is something more than merely the sum of its descriptive parts. The advertising and promotional materials for Applicant's oral appliance shown above foreclose any such showing. Pages from Applicant's website at snorerx.com promote the oral appliance shown in Applicant's specimen, which is sold under Applicant's registered mark SnoreRx, 12 TTABVUE 3, and state that "[m]edical professionals recommend oral appliances be designed with a custom impression to prevent tooth movement."[29] The website touts the product's "Thermal Matrix Design," which "features a thermal matrix material that enables each user to personalize their device with a custom impression" through "a simple step by step process that can be done in the comfort of your home":

---

[27] May 6, 2018 Office Action at TSDR 3 (MERRIAM-WEBSTER DICTIONARY).

[28] May 22, 2019 Office Action at TSDR 1 (MERRIAM-WEBSTER DICTIONARY).

[29] *Id.* at TSDR 6.



**Thermal Matrix Design**

SnoreRx design features a thermal matrix material that enables each user to personalize their device with a custom impression. The custom impression process is a simple step by step process that can be done in the comfort of your home.

[30]

The webpage "simply uses the same two words as the mark" along with text "to describe the relevant feature of" Applicant's goods, *N.C. Lottery*, 123 USPQ2d at 1710, namely, that through the application of heat to the "thermal matrix material," consumers can "personalize their device[s] with a custom impression." The "commercial context here demonstrates that a consumer would immediately understand the intended meaning of [THERMAL MATRIX]. In other words, the evidence shows that the mark is less an identifier of the source of goods . . . and more a description of a feature of characteristics of those goods . . . ." *Id. See also Abcor Dev.*, 200 USPQ at 218 ("Evidence of the context in which a mark is used on labels, packages, or in advertising material directed to the goods is probative of the reaction of prospective purchasers to the mark."); *RxD Media, LLC v. IP Application Dev. LLC*, 125 USPQ2d 1801, 1814 (TTAB 2018) (opposer's own descriptive use of IPAD "directly conveyed to consumers the purpose or function of [its] services"). Indeed, we find that the text used on the snorerx.com website is the most compelling evidence of the mere

---

[30] *Id.*

descriptiveness of Applicant's proposed mark as a whole because it explains that the liner is made of a material in a matrix that is affected by heat and that enables each user to personalize the fit of the appliance. *Cf. Mecca Grade Growers*, 125 USPQ2d at 1958 (an applicant's own use of its mark on its website may be the most probative and damaging evidence of the genericness of its claimed mark).

The third-party webpages shown above confirm that when Applicant's goods are advertised and promoted by others, the same descriptive message of the proposed mark would be understood by consumers. The Amazon.com webpage reproduces portions of the snorerx.com webpage materials, which highlight the product's "Thermal Matrix Design" that "features a thermal matrix material that enables each user to personalize their device with a custom impression."[31] The WellAwareSystems.com article touts the product's "thermal matrix design" through which "[y]ou can personalize the SnoreRx to fit exactly your mouth since you'll be making your own dental impression for a custom fit by heating up the mouthpiece making it pliable."[32] The SnoreLab webpage reproduces Applicant's marketing that the product "boasts . . . a thermal matrix design for custom fitting, and precise 1mm adjustments to get optimum comfort, fit and function."[33] Applicant's and the third-party webpages in the record establish the descriptiveness of the proposed mark as a whole.

---

[31] *Id*. at TSDR 5.

[32] December 2, 2019 Final Office Action at TSDR 2.

[33] May 22, 2019 Office Action at TSDR 3.

In addition to the arguments summarized above, Applicant advances three other arguments in support of his claim that the proposed mark is suggestive, not merely descriptive. He argues that "there is nothing of record herein which would show or suggest that the compound term THERMAL MATRIX is a commonly-used term of art or would have any significance or meaning in the trade or business of applicant." 12 TTABVUE 4. According to Applicant, the "concept of mere descriptiveness must relate to general and readily recognizable word formulations and meanings, either in a popular or technical usage context," and "should not penalize coinage of hitherto unused word combinations whose import would not be grasped without some measure of imagination and mental pause," *id.*, and the "fact that there is no competitive need to use the term 'thermal matrix' in describing the applicant's heat responsive liner for a dental appliance is a relevant indicator of a suggestive rather than a descriptive mark." *Id.* at 6-7.

Applicant's arguments purport to impose non-existent obligations on the Examining Attorney. "[T]here is no requirement that the Examining Attorney prove that others have used the mark at issue or that they need to use it, although such proof would be highly relevant to an analysis under Section 2(e)(1)." *Fat Boys*, 118 USPQ2d at 1514. "The fact that Applicant may be the first or only user of a term does not render that term distinctive" if, as here, it has been shown to be merely descriptive of the goods identified in the application. *Id.*; *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 72 USPQ2d 1833, 1838 (2004) (trademark law does not countenance someone obtaining "a complete

monopoly on use of a descriptive term simply by grabbing it first") (citation omitted); *Clairol, Inc. v. Roux Distrib. Co.*, 280 F.2d 863, 126 USPQ 397, 398 (CCPA 1960) (even "novel way of describing" the product or service (COLOR BATH for hair coloring product) can nonetheless be merely descriptive if "[t]he resultant expression is nothing but the **normal use of the English language**.") (emphasis added).

Applicant also argues that "the Examining Attorney has provided no evidence to show that 'thermal matrix' would or could be understood by consumers to refer to a liner for a dental appliance," 12 TTABVUE 5, and that "there is absolutely no reason why an average purchaser would understand that THERMAL MATRIX refers in any way to a heat responsive and malleable liner on one hand or to a dental appliance on the other." *Id.* at 6. These arguments address the wrong inquiry. "[T]he question is not whether someone presented only with the mark could guess the goods and services listed in the identification. Rather, the question is whether someone who knows what the goods and services are will understand the mark to convey information about them." *Mecca Grade Growers*, 125 USPQ2d at 1953 (citing *DuoProSS*, 103 USPQ2d at 1757).

Finally, Applicant argues that in "the extreme case where THERMAL MATRIX might not be considered entirely original and fanciful, at least some imagination, thought or perception would be required before purchasers could understand a feature or characteristic of the applicant's liner as an integral component of an oral dental appliance." 12 TTABVUE 6. Applicant argues that if a purchaser "must exercise mature thought or follow in a multi-stage reasoning process in order to

determine what product or service characteristic the term indicates, then the term is suggestive rather than merely descriptive." *Id.* at 7. The latter argument correctly states the law, but the former argument fails on the facts because Applicant's own promotional materials and the third-party webpages shown and discussed above make it clear that "a consumer would immediately understand the intended meaning of" the proposed THERMAL MATRIX mark as a descriptor of a key product feature, *N.C. Lottery*, 123 USPQ2d at 1710, and eliminate the need for any "imagination, thought or perception" to determine the term's significance.

On the basis of the record as a whole, we find that the Examining Attorney established that the proposed THERMAL MATRIX mark merely describes a feature of Applicant's "heat responsive and malleable liner that is an integral component of an oral dental appliance used in the mouth and worn over the teeth of an individual while sleeping to reduce the effects of snoring and sleep apnea," namely (in the words of the snorerx.com website), that the "thermal matrix material enables each user to personalize their device with a custom impression." *See Fat Boys*, 118 USPQ2d at 1513. Because Applicant did not successfully rebut that showing, we affirm the mere descriptiveness refusal under Section 2(e)(1).

**Decision**: The refusal to register on the ground that the specimen does not show the mark used in commerce in connection with the goods identified in the application is affirmed.[34]

---

[34] As noted above, we do not reach the failure-to-function refusal.

The refusal to register based on the failure of the drawing to be a substantially exact representation of the mark as used on the specimen of record is reversed.

The refusal to register on the ground that the mark is merely descriptive is affirmed.