This Opinion Is a
Precedent of the TTAB

Mailed: November 9, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE
——

Trademark Trial and Appeal Board
——

*In re Pound Law, LLC*
——

Serial No. 87724338
——

Christopher P. Bussert of Kilpatrick Townsend & Stockton LLP,
    for Pound Law, LLC.

Natalie Kenealy,[1] Trademark Examining Attorney, Law Office 104,
    Zachary Cromer, Managing Attorney.

——

Before Adlin, Lynch and Larkin,
    Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I. Background

Pound Law, LLC ("Applicant") seeks to register on the Principal Register, with a

claim of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C.

§ 1052(f), the proposed mark #LAW in standard characters for the following services:[2]

---

[1] The application previously was assigned to Examining Attorney Barney Charlon, but was reassigned to the current Examining Attorney in July 2021.

[2] Application Serial No. 87724338 was filed on December 18, 2017, based on an allegation of use of the mark in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a). The application includes a claim of ownership of Registration Number 3240931 on the

> Legal referral services rendered to consumers seeking to retain a lawyer to represent them in a legal matter initiated by phone in International Class 35; and
>
> Providing legal services to consumers seeking to retain a lawyer to represent them in a legal matter initiated by phone in International Class 45.

The Examining Attorney refused registration of the proposed mark in both classes under Sections 1, 2, 3 and 45 of the Trademark Act, 15 U.S.C. §§ 1051-53 and 1127, on the ground that it fails to function as a service mark because "the applied-for mark #LAW as used on the specimen of record would be understood by consumers only as a means to contact applicant – a dialing code or an abbreviated phone number…."[3] As Applicant explains, "[u]se of the # symbol as part of a telephone number has become very valuable to entities as use of that symbol permits (1) the creation of a unique and easy to remember alphanumeric telephone number," and (2) consumers may use it for "speed dialing" on cell phones using a reduced number of keys.[4]

While Applicant acknowledges that its proposed mark is a vanity phone number, Applicant contends that #LAW also should be registrable as a mark because it is

Supplemental Register for the same mark #LAW for "providing legal services; legal information; lawyer referral services; advertising cooperative services for the legal industry; advertising agency, marketing and promotional services rendered to the legal industry" in International Class 35. That registration issued on May 8, 2007 and has been renewed.

[3] 19 TTABVUE 5 (Examining Attorney's Brief). Citations to the appeal record before the Board are to TTABVUE, the Board's online docketing system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable.

[4] February 28, 2019 Response to Office Action at TSDR 4, 24. Citations to the application record are to the TSDR database.

"widely known to the consuming public as an alphanumeric telephone number uniquely associated with the services of Applicant's licensee."[5]

Applicant offered two general types of specimens of use – first, multimedia files of audio and video advertising by its licensee, the law firm Morgan & Morgan,[6] and second, Applicant's website promoting the use of the #LAW mnemonic phone number. Representative examples of the relevant multimedia content refer to Morgan & Morgan as a provider of legal services and use the proposed mark in ways such as the following:

- "Call #LAW on your cell phone. #LAW. That's all"

- "Call us at #LAW, that's #529."

- "Dial #LAW (#529) on your cell phone."

- "Dial #LAW on your cell. Dial #LAW. That's all."

Additionally, Applicant's specimens include the following screenshots that are stills of video advertising:

---

[5] August 2, 2018 Response to Office Action at TSDR 8. Applicant's licensee is the law firm, Morgan & Morgan, per the declaration of Brian Kempner. For ease of reference in this decision, references to use by Applicant encompass use by the licensee.

[6] One of Applicant's specimens states in relevant part that "Pound Law was created by John Morgan, a nationally recognized trial attorney and the founder of Morgan & Morgan." December 18, 2017 specimen at TSDR 2.

Serial No. 87724338

https://drive.google.com/file/d/1rYizV67hq4Y-wdj4_tpGNf8hzi-U2J3B/view







The second type of specimens consist of the following screenshots from Applicant's website:







As Applicant discusses at length, the prosecution history of the application is not ideal, spanning several years, and including numerous Office Actions, two approvals of the application for publication that later were rescinded, and a genericness refusal that was subsequently withdrawn following Applicant's arguments and evidence that the proposed mark was a vanity phone number and should not be deemed generic.[7]

---

[7] December 10, 2019 Response to Office Action at TSDR 5; January 20, 2021 Request for Reconsideration at TSDR 1-151. Applicant also contends that it sought an interview with the Law Office Managing Attorney, who allegedly did not return voice mail messages about the

The failure-to-function refusal based on the specimens was maintained. Applicant filed this appeal, and after submitting an appeal brief that exceeded the applicable page limitation, filed a substitute appeal brief complying with the page limitation.

Unbeknownst to the Board at that time, Applicant had also filed a request for reconsideration with additional evidence. When this came to the Board's attention, after Applicant filed its substitute brief, the Board retroactively suspended the case and restored jurisdiction to the Examining Attorney, who denied reconsideration with additional supporting evidence. Applicant then requested and received a remand from the Board to submit additional evidence,[8] after which the Examining Attorney once again maintained the failure-to-function refusal. The appeal resumed, Applicant filed a Supplemental Brief, and the appeal has been fully briefed. As explained below, we affirm the refusal to register.

---

matter. 17 TTABVUE 11 (Applicant's Supplemental Brief). The Examining Attorney's Brief does not address this matter. TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 709 (2022) indicates that interviews with examining attorneys "**may** be conducted" (emphasis added), and § 709.04 provides that examining attorneys generally must respond to telephone messages within a reasonable time. The TMEP does not address an applicant's wish to involve a managing attorney in an interview. Regardless, based on the extensive prosecution history in this case, we find that Applicant had ample opportunity to present its views on the issues in this case, and was not prejudiced by the lack of a personal interview with the Law Office Managing Attorney.

[8] Given the multiple opportunities Applicant had to submit substitute specimens (the record includes several) and evidence, we find unavailing Applicant's repeated contentions that it was never given the chance to submit a substitute specimen demonstrating service mark use. 17 TTABVUE 25 (Applicant's Supplemental Brief). As the Examining Attorney notes, Applicant has suffered no prejudice in this regard. 19 TTABVUE 13 (Examining Attorney's Brief).

## II.   Failure to Function

### A.   Introduction

Applicant and the Examining Attorney frame this appeal differently. Applicant casts the failure-to-function refusal as the improper application of an alleged per se rule treating mnemonic telephone-number marks as incapable of serving a source-indicating function. The Examining Attorney denies applying a per se standard, and instead casts this refusal simply as a specimen-based determination that consumers would not perceive Applicant's use of #LAW as a source indicator, but rather **only** as a means to contact Applicant, based on the manner of use.

As the Trademark Act makes clear, the USPTO "is statutorily constrained to register matter on the Principal Register if and only if it functions as a mark." *In re Brunetti,* 2022 USPQ2d 764, at *9 (TTAB 2022). Section 45 of the Trademark Act defines "trademark" and "service mark" as "any word, name, symbol, or device, or any combination thereof … used by a person … to identify and distinguish" goods or services, respectively, "and to indicate the source" of the goods or services, "even if that source is unknown." 15 U.S.C. § 1127; *see also In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976) ("[T]he classic function of a trademark is to point out distinctively the origin of the goods to which it is attached."). Thus, "[t]he Trademark Act is not an act to register words but to register trademarks [or service marks]. Before there can be registrability, there must be a trademark (or a service mark) and, unless words have been so used, they cannot qualify for registration." *In re Std. Oil Co.*, 275 F.2d 945, 125 USPQ 227, 229 (CCPA 1960).

We must assess whether Applicant's proposed mark, #LAW, functions as a mark based on whether the relevant public, i.e. purchasers or potential purchasers of the identified legal and legal referral services, would perceive #LAW as identifying the source or origin of such services. *See, e.g.*, *In re Texas With Love, LLC*, 2020 USPQ2d 11290, at *2 (TTAB 2020) ("Whether the term … falls within this definition and functions as a mark depends on whether the relevant public, i.e., purchasers or potential purchasers of Applicant's goods [or services], would perceive the term as identifying the source or origin of Applicant's goods [or services]."); *In re TracFone Wireless, Inc.*, 2019 USPQ2d 222983, at *1-2 (TTAB 2019) ("The key question is whether the asserted mark would be perceived as a source indicator for Applicant's services."); *In re Aerospace Optics, Inc.*, 78 USPQ2d 1861, 1862 (TTAB 2006) ("[T]he critical inquiry is whether the asserted mark would be perceived as a source indicator."). In this case, because there are no limitations to the channels of trade or classes of consumers, the relevant consuming public for legal and legal referral services includes ordinary members of the general public. *See In re Yarnell Ice Cream, LLC*, 2019 USPQ2d 265039, at *5 (TTAB 2019); *cf. CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983) (applying this principle in the likelihood of confusion context).

"In analyzing whether a proposed mark functions as a source identifier, the Board focuses on consumer perception. The Board looks to the Applicant's specimens and other evidence of record showing how the designation is actually used in the marketplace to determine how the designation would be perceived by the relevant

public." *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 2022 USPQ2d 115, at *2-*3 (Fed. Cir. 2022) (cleaned up; citations omitted); *see generally Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1370 (Fed. Cir. 2018) ("evidence of the public's perception may be obtained from 'any competent source," including "consumer surveys, dictionaries, newspapers and other publications," as well as evidence of how others use the term).

### B.    Does the Nature of #LAW Affect Consumer Perception of It?

Turning first to whether the nature of Applicant's proposed mark affects how consumers perceive it in connection with Applicant's services, matter widely used to convey informational messages generally is not perceived as indicating a single source. *See Vox Populi Registry*, 2022 USPQ2d 115, at *3 (affirming failure-to-function refusal where .SUCKS would be viewed "as only a non-source identifying part of a domain name, rather than as a mark"); *In re Wal-Mart Stores, Inc.*, 129 USPQ2d 1148, 1152 (TTAB 2019) (INVESTING IN AMERICAN JOBS does not function as a mark because it is "merely an informational statement that Applicant is selling certain goods that are made or assembled in America in areas of the store where the signage appears"); *In re Brock Residence Inns, Inc.*, 222 USPQ 920 (TTAB 1984) (affirming refusal to register FOR A DAY, A WEEK, A MONTH OR MORE! because it "is simply an ordinary informational statement about the availability of rooms for various lengths of time"). The U.S. Court of Appeals for the Federal Circuit has found "helpful" the Board's practice of looking to evidence "'showing how the designation is actually used in the marketplace' to determine 'how the designation

would be perceived by the relevant public.'" *Vox Populi Registry*, 2022 USPQ2d 115, at *2-3 (quoting *In re Eagle Crest Inc.,* 96 USPQ2d 1227, 1229 (TTAB 2010)).

#LAW is commonly used as a hashtag in the legal field. Although on appeal Applicant emphasizes its use of #LAW as a relatively new type of vanity phone number (and proposed service mark), the record also includes evidence of Applicant's licensee, Morgan & Morgan, using #law as a hashtag,[9] as follows (yellow arrow added for emphasis):



[10]

---

[9] "In the social media context, a hashtag 'is a word or phrase preceded by a hash mark (#), used within a message to identify a keyword or topic of interest and facilitate a search for it.'" *In re DePorter*, 129 USPQ2d 1298, 1302-03 (TTAB 2019) (footnote and citation omitted). "Where a hashtag is used as part of an online social media search term, it generally serves no source-indicating function, because it 'merely facilitate[s] categorization and searching within online social media,'" and adding a hashtag "to an otherwise unregistrable term typically will not render the resulting composite term registrable." *Id.* at 1303 (citation omitted).

[10] August 28, 2018 Office Action at TSDR 22. We are not persuaded by Applicant's attempt at distinguishing this use as its licensee's rather than its own. The use is by Applicant's same

Consumers will perceive the use of #LAW shown above as a keyword hashtag.

In an effort to differentiate its #LAW proposed mark from the hashtag used above, Applicant points out that its radio advertising vocalizes #LAW as "pound law."[11] Applicant also introduced evidence that the # symbol may signify "Number, Pound, or Hashtag."[12] We bear in mind these various possibilities, and the principle that "there is no correct pronunciation of a trademark, and consumers may pronounce a mark differently than intended by the brand owner." *Embarcadero Techs., Inc. v. RStudio, Inc.*, 105 USPQ2d 1825, 1835 (TTAB 2013) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1912 (Fed. Cir. 2012)). Regardless of Applicant's own pronunciation of #LAW in audible advertising as "pound law" rather than "hashtag law," in Applicant's extensive visual-only advertising that contains no such audio, "it obviously is not possible for [Applicant or its licensee] to control how purchasers will vocalize its mark." *Centraz Indus. Inc. v. Spartan Chem. Co.*, 77 USPQ2d 1698, 1701 (TTAB 2006). Given the prevalence of social media and hashtags, many purchasers may perceive and vocalize #LAW as a hashtag, regardless of Applicant's intentions.

The record reflects consumer exposure to many third parties using #LAW. An online article from Rapid Legal titled "Top 25 Hashtags for Law Firm Marketing on Instagram and Twitter" lists #law among them, noting that: "There's a good reason

---

licensee, Morgan & Morgan, whose use Applicant relies on for various specimens of its use of the mark in commerce.

[11] February 28, 2019 Response to Office Action at TSDR 10.

[12] May 11, 2020 Response to Office Action at TSDR 81 (lifewire.com).

hashtags have become so ubiquitous. With social media marketing becoming the new norm when it comes to promoting a business or brand, hashtags are a great way to ensure your message gets to those who are looking for specific content." With no mention of Applicant or Morgan & Morgan, the article goes on to identify #law as one of the "best hashtags for law firms and attorneys who want to use social media marketing to grow their business."[13] Such popularity can influence consumer perception of a term. *See In re Reed Elsevier Props.*, 482 F.3d 1376, 82 USPQ2d 1378, 1381 (Fed. Cir. 2007) (appropriate that "in determining what the relevant public would understand LAWYERS.COM to mean, the board considered eight websites containing 'lawyer.com' or 'lawyers.com' in the domain name"). For example, in *DePorter*, 129 USPQ2d at 1302, the Board held that #MAGICNUMBER108 failed to function as a mark based on "wide use of the proposed mark in a non-trademark manner to consistently convey information about the Chicago Cubs' World Series appearance and win after a 108-year drought. This evidence is competent to suggest that upon encountering Applicant's 'mark,' prospective purchasers familiar with such widespread non-trademark use are unlikely to consider it to indicate the source of Applicant's goods."

For the failure-to-function analysis, we consider all the evidence of record, including, but not limited to, an applicant's specimens, if available. *See, e.g.*, *D.C. One Wholesaler, Inc. v. Chien*, 120 USPQ2d 1710, 1716 (TTAB 2016) (considering third-party use evidence as well as the applicant's specimens and other examples of use to

---

[13] August 28, 2018 Office Action at TSDR 19-20 (rapidlegal.com).

affirm failure-to-function refusal); *Eagle Crest*, 96 USPQ2d at 1230 (affirming failure-to-function refusal of ONCE A MARINE, ALWAYS A MARINE where third-party evidence showed widespread use of the phrase and use on "applicant's specimens as well as its other materials would likely reinforce the perception" of the proposed mark as informational in the sense of expressing support, admiration or affiliation with the Marines). The record in this case includes screenshots of numerous third parties using #LAW as a hashtag in connection with services similar to Applicant's legal and legal referral services. Examples from the record (with yellow arrows added for emphasis) include the following:[14]

---

[14] TSDR August 28, 2018 Office Action at 2-24.

























This evidence is directly relevant and quite persuasive. It shows consumer exposure to #LAW as an informational hashtag used in connection with services similar or identical to those identified in the involved application and rendered by multiple unrelated entities. Applicant criticizes this evidence by suggesting that

because use as a hashtag does not constitute third-party trademark use, or because the third-party uses are "inconsequential," they should not affect the registrability of Applicant's proposed mark.[15] We agree the third-party uses generally are not in the manner of trademarks, but this does not render the evidence irrelevant. Instead, we find the nature of such third-party uses probative of consumer perception of #LAW. When encountering Applicant's use of its proposed mark, consumers would be less inclined to view this common term as a source indicator, because they have been exposed to third-party use of the same term in the same field. *See DePorter*, 129 USPQ2d at 1302 ("*[A]ny* evidence demonstrating widespread use of the wording is relevant [to consumer perception], including, in this case specifically, social media tweets and posts of the type the Examining Attorney made of record in this application") (emphasis in original). As we discuss below, Applicant's use of its proposed mark is not qualitatively different than the third-party uses that Applicant concedes are non-source-indicating.

Applicant focuses on the status of its proposed mark as a mnemonic telephone number, and insists that "courts and the Office have long recognized the registrability of such marks."[16] Applicant points to specific guidance in the TMEP related to the examination of proposed marks that are alphanumeric telephone numbers, arguing that such guidance controls the assessment of #LAW. The TMEP section on which Applicant relies provides in relevant part (emphasis added):

---

[15] February 28, 2019 Response to Office Action at TSDR 13.

[16] 17 TTABVUE 14 (Applicant's Supplemental Brief).

1209.03(l)    Telephone Numbers

If an applicant applies to register a designation that consists of a merely descriptive term with numerals in the form of an **alphanumeric telephone number (e.g., 800, 888, or 900 followed by a word)**, the examining attorney must refuse registration under §2(e)(1). *See In re Page*, 51 USPQ2d 1660 (TTAB 1999) (888 PATENTS merely descriptive of patent-related legal services). **The fact that a designation is in the form of a telephone number is insufficient, by itself, to render it distinctive.**

If the relevant term is merely descriptive, but not generic, the mark may be registered on the Principal Register with a proper showing of acquired distinctiveness under §2(f), or on the Supplemental Register, if appropriate. *See Express Mortg. Brokers Inc. v. Simpson Mortg. Inc.*, 31 USPQ2d 1371, 1374 (E.D. Mich. 1994) (369-CASH held merely descriptive but shown to have acquired distinctiveness as applied to mortgage brokering and mortgage-related services). **Of course, the designation must also be used in the manner of a mark**. *See* TMEP §§ 1202–1202.16 regarding use as a mark.

\*\*\*

TMEP § 1209.03(l) (2022).

While, as we discuss below, this case does not involve what Applicant terms a "per se" rule of treatment for proposed shorter vanity phone numbers, these new versions of vanity cell numbers preceded by the # symbol present a somewhat different situation than traditional alphanumeric phone numbers, such as those discussed in the above TMEP section and cases cited therein. The TMEP and prior cases involved alphanumeric (defined as "consisting of both letters and numbers and often other symbols") telephone numbers.[17] The different formation of the new shorter cell phone

---

[17] We take judicial notice of this definition of "alphanumeric" from Merriam-Webster (https://www.merriam-webster.com/dictionary/alphanumeric), accessed September 6, 2022. The Board may take judicial notice of dictionary definitions, including online dictionaries

mnemonic vanity numbers impacts perception and distinguishes them from most of the examples of prior registered marks relied on by Applicant as evidence of USPTO practice in treating proposed marks that are in the form of traditional-length alphanumeric phone numbers.[18]

Unlike the traditional 10- or 11-digit numbers, the new shorter cell phone mnemonic numbers resemble hashtags commonly used nowadays in social media and other contexts, which creates more than just a minor additional wrinkle in assessing consumer perception of such proposed marks. As the Federal Circuit described traditional phone numbers in *In re Dial-A-Mattress Operating Corp.*, "telephone numbers consist of only seven numbers and typically can be used by only one entity at a time." 240 F.3d 1341, 57 USPQ2d 1807, 1811 (Fed. Cir. 2001). Here, Applicant's proposed mark #LAW is in use by numerous competitors as a hashtag. Thus, unlike the vanity phone numbers addressed by the *Dial-A-Mattress* court, #LAW, which is both a popular hashtag and a vanity phone number, is used by considerably more than one entity at a time.

Regardless, the Examining Attorney does not dispute the registrability of alphanumeric phone numbers when appropriate. However, the Examining Attorney contends that "[h]ere, the specimens of record do not show service mark usage of the applied-for mark because in each instance where the mark is depicted there is a

---

that exist in printed format or have regular fixed editions. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd,* 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *In re S. Malhotra & Co. AG*, 128 USPQ2d 1100, 1104 n.9 (TTAB 2018); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006).

[18] *See* 17 TTABVUE 23-24 (Applicant's Supplemental Brief).

solicitation for consumers to utilize the wording #LAW to reach applicant and the mark is not perceived as the source of the underlying services."[19]

### C.    Does the Manner of Applicant's Use of the Proposed Mark Convey to Consumers that It Is a Source Indicator?

The ways an applicant uses a proposed mark may affect whether consumers perceive it as a source indicator or something else. *See, e.g.*, *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978) ("Evidence of the context in which a mark is used in labels, packages, or advertising materials directed to the goods is probative of the reaction of prospective consumers to the mark."), cited in *In re N.C. Lottery*, 866 F.3d 1363, 123 USPQ2d 1707, 1709-10 (Fed. Cir. 2017); *see also In re Mecca Grade Growers, LLC*, 125 USPQ2d 1950, 1958 (TTAB 2018) ("[A]n applicant's own website and marketing materials may be probative or even … 'the most damaging evidence' in indicating how the relevant purchasing public perceives a term.") (quoting *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1112 (Fed. Cir. 1987)). Use of a designation merely to convey information, rather than to indicate source, is not service mark use. TMEP § 1301.02(a); *see* 15 U.S.C. § 1127 (definition of service mark). A proposed "mark must be used in such a manner that it would be readily perceived as identifying the specified goods [or services] and distinguishing a single source or origin…. The mere fact that a designation appears on the specimen of record does not make it a trademark [or service mark]…. A critical element in determining whether matter sought to be registered is a trademark [or service mark]

---

[19] 19 TTABVUE 13 (Examining Attorney's Brief).

is the impression the matter makes on the relevant public." *Aerospace Optics*, 78 USPQ2d at 1862 (citations omitted); *see also Yarnell Ice Cream*, 2019 USPQ2d 265039, at \*47 ("The word 'Scoop' that appears on the uniform is used as, and thus is likely to be perceived as, the name of the cartoon character himself, rather than as a mark identifying the goods.").

"We have said that a service mark must be 'used in such a manner that it would be readily perceived as identifying' the services, which is 'determined by examining the specimens of record in the application.'" *In re Keep A Breast Found.*, 123 USPQ2d 1869, 1876 (TTAB 2017) (quoting *In re Moody's Invs. Serv. Inc.*, 13 USPQ2d 2043, 2047 (TTAB 1989)); *see also In re AOP LLC*, 107 USPQ2d 1644, 1654 (TTAB 2013) (in deciding how the average purchaser will perceive and react to applicant's proposed mark, the question is whether the specimens submitted "show the applied-for mark used in a source-identifying manner, or rather in a manner that simply conveys information to the consumer"). We must assess "the commercial impression it makes on the relevant public (e.g., whether the term sought to be registered would be perceived as a mark identifying the source of the services)." *Keep A Breast Found.*, 123 USPQ2d at 1879 (citing *Aerospace Optics*, 78 USPQ2d at 1862).

As noted above, Applicant's specimens fall into two broad categories – first, multimedia specimens consisting of radio and television ads that promote the law firm Morgan & Morgan, and second, website specimens that promote the #LAW vanity phone number to the general public and to law firms.

We find that Applicant's multimedia specimens do not show service mark use because they present #LAW as a mnemonic for the telephone number #529, by which prospective clients may contact a lawyer at the Morgan & Morgan law firm, not as a source-indicator for legal or legal referral services. The visual and audio uses of #LAW consistently come in the context of commands to "call" or "dial" this number on a cell phone, and often include the numerical equivalent, #529. For example, uses include "…call us on your cell phone at #law – that's #529…," and "dial #law (#529) on your cell."[20] The multimedia ads consistently refer to the source of the legal services being provided as Morgan & Morgan. As another example, one ad begins with "Attorney Ultima Morgan" noting that "[a]t Morgan & Morgan, we just celebrated 30 years of service to you," and she appears onscreen with the law firm name and the proposed mark as shown below, explaining their legal work:

---

[20] 19 TTABVUE 13 (Examining Attorney's Brief).

[20] February 28, 2019 Response to Office Action, TSDR Media Files.



[21]

As in the introduction of Ultima Morgan above, the multimedia ads generally identify the person featured in the ad as affiliated with Morgan & Morgan, for example as "John Morgan of Morgan & Morgan," or "Dan Morgan of Morgan & Morgan" and include what is shown below, or something comparable identifying the law firm name:

---

[21] February 28, 2019 Response to Office Action, at TSDR Media File 5.

[22]

We find that consumers viewing or listening to the multimedia specimens would perceive #LAW as a mnemonic cell phone number, not as the source of the services being promoted. Consumers would perceive the source of the legal services advertised as the Morgan & Morgan law firm.[23] Consistent with this finding, Applicant's declarant, Brian Kempner,[24] avers that "[s]ince Applicant's licensee began the current #LAW campaign in August 2017, none of the advertising of the #LAW mark conducted by Applicant's licensee in any media promotes the existence of the #LAW mnemonic/vanity telephone number without also prominently identifying Morgan and Morgan, P.A., Applicant's licensee, as the source of the legal services provided under the #LAW mark."[25] In the context of laudatory or otherwise descriptive terms,

---

[22] February 28, 2019 Response to Office Action, at TSDR Media File 14.

[23] The same holds true of other advertising Applicant submitted and relies on in its Supplemental Brief. 17 TTABVUE 21.

[24] January 20, 2021 Request for Reconsideration at TSDR 3-4 (Sixth Declaration of Brian Kempner). Mr. Kempner's position with Applicant is identified only as "an authorized representative," and he bases the declarations on his alleged personal knowledge or consultation of "records maintained by Applicant or Applicant's licensee, Morgan and Morgan, P.A."

[25] January 20, 2021 Request for Reconsideration at TSDR 4 (Sixth Declaration of Brian Kempner).

our primary reviewing court has observed that where a proposed mark is used in association with an applicant's known or primary trademark, that tends to show that consumers will understand the proposed mark in its non-source identifying sense. *See, e.g.*, *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 57 USPQ2d 1720, 1722 (Fed. Cir. 2001) ("Number One in Floorcare," when used in association with HOOVER, is not perceived as a source identifier but as a laudatory phrase); *In re Helena Rubinstein, Inc.*, 410 F.2d 438, 161 USPQ 606, 609 (CCPA 1969) ("The specimens of record disclose that 'PASTEURIZED' appears in association with the internationally well-known name 'Helena Rubinstein.' Such concurrent usage would, in our judgment, be emanative of the conclusion that the ordinary purchaser would not consider the mark indicative of the origin of the goods."); *see also Vox Populi*, 2022 USPQ2d 115, at *3-*4 (upholding Board's finding that .SUCKS failed to function as a trademark where applicant's advertising used the terms both as the product and as its source identifier). We think the same principle applies here.

The stills from video ads shown below bolster this commercial impression by displaying #LAW with an actual cell phone or a design of one.



Applicant argues that the appearance of #LAW "standing alone and in all capital letters" in the top still above is "expressly recognized as service mark use under TMEP § 1301.02,"[26] but we disagree. Among the "[f]actors that the examining attorney should consider" in assessing a specimen, the cited TMEP section lists

---

[26] 17 TTABVUE 20 (Applicant's Supplemental Brief).

physical separation "from textual matter" and the use of capital letters, but the section ultimately stresses that "the fact that the proposed mark is prominently displayed does not in and of itself make it registrable, if it is not used in a manner that would be perceived by consumers as an indicator of source…. The important question is not how readily a mark will be noticed but whether, when noticed, it will be understood as identifying and indicating the origin of the services." TMEP § 1301.02 (citations omitted); *See Wal-Mart Stores,* 129 USPQ2d at 1152 ("[T]he mere fact that applicant's slogan appears on the specimens, even separate and apart from any other indicia which appear on them, does not make it a trademark.").

Turning to the second type of specimens, the three pages of website screen captures are more varied, and we address each page in turn. Unlike the multimedia specimens, the webpages are not Morgan & Morgan advertisements.



In the first screenshot above, the page appears to be directed to potential consumers in need of legal services, and explains how the #LAW/#529 phone number works to connect them to lawyers. While #LAW appears by itself in different colored fonts at the top and bottom left corners of the page, in the context of the page as a

whole, we find that consumers would view the matter as a mnemonic for a phone number and not a source indicator. Applicant maintains that on its specimen, #LAW appears "in logo form and physically separated from other elements, with different colors for the # and LAW elements," such that with the statement on its specimen that "the #LAW logo and name are registered trademarks of Pound Law, LLC," the specimen shows good service mark use.[27] We disagree. We find that this page is about using the phone number, and Applicant's own tagline "Easy to remember. Simple to dial." not only emphasizes that #LAW is a mnemonic for a phone number, but highlights that the prominence of the standalone #LAW uses on the page presumably help make the phone number "easy to remember."

In addition, #LAW appears under #529 on a cellphone screen, clearly conveying that this is the phone number to use to be connected with a lawyer who is part of the "nationwide network of law firms." Similarly, the prospective user is advised to "[s]imply dial #529 (#Law) from any mobile phone." The tagline "Easy to remember. Simple **to dial**." (emphasis added) is displayed at the bottom of the page and stresses that #LAW is a phone number to be "dialed." The page also includes the statements that the proposed mark "works with a nationwide network of law firms" and "connects you with an attorney in your local area," and given the other matter on the page, these statements give the impression of the phone number working with a network of firms, and the phone number connecting users with local attorneys.

---

[27] 17 TTABVUE 19 (Applicant's Supplemental Brief).

We are unswayed by Applicant's argument that consumer perception would be substantially influenced by the small print statement at the bottom of the page that the #Law logo and name are registered trademarks. *See TracFone Wireless,* 2019 USPQ2d 222983, at \*2 (affirming failure-to-function refusal and holding that "[a]lthough this use is accompanied by the federal trademark registration symbol, this is not dispositive for our analysis"). Such a visually minimal statement and the presence of the federal registration symbol cannot transform an otherwise unregistrable designation into a registrable mark. *See, e.g., In re Crystal Geyser Water Co.,* 85 USPQ2d 1374, 1379 n.4 (TTAB 2007); *In re Active Ankle Sys. Inc.,* 83 USPQ2d 1532, 1538 n.5 (TTAB 2007). Ultimately, whether a term performs the function of a trademark depends on its manner of use and the probable impact of that use on customers. *Moody's Invs. Serv.,* 13 USPQ2d at 2047. We find that #LAW does not perform such a function on this specimen.



In the second webpage specimen, the "About #Law" page shown above, the proposed mark again appears on a cell phone screen under the corresponding numbers on the keypad, #529, emphasizing that it is a mnemonic for a phone number. The text similarly refers to "dialing #Law (#529) from your mobile device." Thus, as with the first webpage specimen, even though #Law also appears standing alone in the upper and lower left corners, and is found in the heading "About #Law," given the content of the page overall, we find that consumers would view the proposed mark as a mnemonic for a phone number. The heading informs the reader that the text concerns how the phone number can be used and why it was created. Again, we find

that consumer perception of the #LAW phone number would not be changed by the smaller print statement at the bottom of the page.



The third webpage specimen, shown above, appears to be directed to lawyers who may wish to become part of the referral network of attorneys using #LAW/#529 as their phone number in a particular geographic area. The promotion alerts the lawyers that "By dialing #law **(#529)** from any mobile phone or device potential clients can be connected with your firm instantly." As elaborated on elsewhere in the record

regarding pound numbers generally,[28] different firms may employ the number to have their own "#Law territories and immediately gain access to prospects that dial #Law from their mobile phones when seeking legal representation in their area." The bold tagline at the end of the text states, "Even if they don't know your name, they will know your number, #Law." Because of the strong emphases on #LAW as "your number" here and throughout the page, the other references to #LAW at the top and bottom of the page, and the use of "CONTACT #LAW" would be perceived as additional references to that mnemonic number, and not as a source indicator.

This third webpage specimen also highlights that any legal and legal referral services accessible through the #LAW number do not emanate from a **single** source that controls their nature and quality. *See Kenner Parker Toys, Inc. v. Rose Art Indus.*, 963 F.2d 350, 22 USPQ2d 1453, 1456 n.1 (Fed. Cir. 1992) ("trademarks function as guarantors of quality, suppliers of information to consumers seeking a reliable source of products"); *In re Polar Music Int'l AB*, 714 F.2d 1567, 221 USPQ 315, 317 (Fed. Cir. 1983) ("A trademark informs the public of a source of the goods and assures them of its quality."). Instead, the webpage touts that various unrelated firms in multiple locations, i.e. sources of some of the identified services, can use the number as their point of contact to "make[] it easy for clients to reach [them] by simply dialing #law."

---

[28] TSDR January 20, 2021 Request for Reconsideration at 141 (#EasyDial website stating "Our #Code system allows us to assign areas by county, state, or nationwide. So we can route the calls based on your business needs.").

This flies in the face of Applicant's claim that the "alphanumeric telephone number [is] uniquely associated with the services of Applicant's licensee."[29]

We also consider other evidence in the record of Applicant's use of the proposed mark. As the Board made clear in *Aerospace Optics*:

> To be a mark, the term must be used in a manner calculated to project to purchasers or potential purchasers a single source or origin for the goods [or services]. *In re Volvo* [*Cars of North Am. Inc.*, 46 USPQ2d 1455 (TTAB 1998)]. We determine whether this has been achieved by examining the specimens of use along with any other relevant material submitted by applicant during prosecution of the application. (citation omitted)

78 USPQ2d at 1862.

---

[29] August 2, 2018 Response to Office Action at TSDR 8. Applicant's licensee is the law firm Morgan & Morgan, per the declaration of Brian Kempner. For ease of reference in this decision, references to use by Applicant encompass use by the licensee.



30

Notably, in the above screenshot from Applicant's website, Applicant emphasizes that "Pound Law (#LAW or #529) is a telecommunications service," and refers to "calling #LAW," while also stating that "[b]y dialing #LAW you are contacting an **independent** law firm that will make its **own determination** whether to accept your case or to provide legal services to you" (emphasis added).[31] This page gives the impression of #LAW as a mnemonic for a phone number, not as an indicator of services provided by a single source. This page also again emphasizes that services

---

[30] July 22, 2020 Office Action at TSDR 276 (poundlaw.com).

[31] July 22, 2020 Office Action at TSDR 276 (poundlaw.com).

accessible through the phone number may come from various "independent law firm[s]" such that the phone number does not equate to a sole source-indicator for consumers.

## D.    Applicant's Remaining Arguments and Evidence

Applicant argues that the refusal in this case disregards the Federal Circuit's *Dial-A-Mattress* precedent, which it argues "expressly recognize[s] that mnemonic telephone numbers function as trademarks."[32] Just as there is no per se rule that all mnemonic telephone numbers are not registrable, there is no per se rule that they are. As in all refusals, consumer perception is determined based on the unique evidence and circumstances in each case. *Dial-A-Mattress* reversed a genericness refusal to register 1-800-MATTRESS, holding that the mark was descriptive but acquired distinctiveness based on the applicant's previously registered legally equivalent mark. 57 USPQ2d at 1813. Here, #LAW is refused registration on a different basis, failure to function in view of the manner of use by Applicant on its specimens. Thus, while we agree that *Dial-A-Mattress* indicates that an alphanumeric phone number **that is used as a source-indicator** can be registered under certain circumstances, the refusal in this case rests on our finding based on the entire record before us demonstrating Applicant does not use #LAW as a source-indicator. Therefore, this case presents no inconsistency with *Dial-A-Mattress*.

---

[32] 20 TTABVUE 3 (Applicant's Reply Brief).

For the same reason, Applicant's third-party declaration from George Carapella of Easy Dial Codes, a company that ensures the routing of calls associated with mnemonic/vanity telephone numbers, does not convince us there should be a different result on the facts of this case. While Mr. Carapella testified that such numbers "present great branding opportunities" and that a couple of his company's competitors promote the numbers as such,[33] the result in this case depends on consumer perception of Applicant's particular uses of this particular mnemonic phone number.

We also disagree with Applicant's suggestion that USPTO past practice compels the acceptance of Applicant's specimens and the registration of #LAW. Most of the cases relied on by Applicant present a traditional type of alphanumeric phone number that is not identical to a widely used hashtag and telephone keypad symbol. Regardless, we must apply the law to the facts in every case before us. *See, e.g.*, *In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) ("The PTO is required to examine all trademark applications for compliance with each and every eligibility requirement.…"); *In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) (USPTO "must assess each mark on the record of public perception submitted with the application"); *Texas With Love*, 2020 USPQ2d 11290, at *8 n.10 ("As we recently stated in an analogous situation, '[w]e do not believe that our decision here is inconsistent with the registration of the third-party marks cited by Applicant but to the extent that it is, it is the decision required under the statute

---

[33] TSDR January 20, 2021 Request for Reconsideration at 135-36.

on the record before us.'" (quoting *In re Ala. Tourism Dept.*, 2020 USPQ2d 10485, at *11 (TTAB 2020)).

To the extent Applicant relies on its prior Supplemental Register registration of #LAW,[34] which issued in 2007, the Board rejected similar evidence and arguments in *TracFone Wireless,* noting that the Supplemental Register registration in that case was "more than eight years old; consumer perception of [the proposed mark] may have changed with the passage of time," and emphasizing that "[t]he Board must make its own findings of fact, and that duty may not be delegated by adopting the conclusions reached by an examining attorney in another application." 2019 USPQ2d 222983, at *10-12. Applicant's prior registration in this case is more than 15 years old. Circumstances have changed since that registration was issued, including that there is now widespread third-party use of the proposed mark as a hashtag.[35] Given the nature of Applicant's use on the specimens at issue, the prior registration does not convince us that #LAW functions as a service mark in the case before us.[36]

---

[34] A registration on the Supplemental Register is not entitled to any of the Section 7(b) presumptions. *D.C. One Wholesaler, Inc. v. Chien*, 120 USPQ2d 1710, 1713 n. 12 ("Respondent's registered mark is not entitled to the presumption of validity established by Trademark Act Section 7(b), 15 U.S.C. § 1057(b), because Respondent's mark is registered on the Supplemental Register. The Section 7(b) presumption is, by its terms, limited to marks registered on the Principal Register.").

[35] *See* February 28, 2019 Response to Office Action at TSDR 22 (lifewire.com 2018 article noting the "relatively recent explosion in popularity of the hashtag").

[36] Regardless, even with a Principal Register registration, "[t]he presumption of validity of 15 U.S.C. § 1057(b) does not carry over from registration of the older mark to a new application for registration of another mark that happens to be similar (or even nearly identical)." *Cordua Rests.,* 118 USPQ2d at 1635. A new application must be examined "for compliance with each and every eligibility requirement" notwithstanding any prior similar or identical registered mark. *Id.*

We also have considered all the evidence Applicant offered to support its claim that consumers view #LAW as its mark.[37] The evidence regarding advertising efforts and expenditures, call volume, consumer contacts, etc. may involve large numbers, but as Applicant's own declarant[38] and exemplary advertising and promotion in the record show, the promotional efforts and results focus on the law firm of Morgan & Morgan as the source of services, reachable at the phone number #LAW. As shown above, Applicant is only one of many firms using #LAW to facilitate communication. *Cf. Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984) ("When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances.").

***Decision***: We affirm the refusal to register Applicant's proposed mark under Sections 1, 2, 3 and 45 of the Trademark Act, 15 U.S.C. §§ 1051-53 and 1127, on the ground that it fails to function as a mark.

---

[37] We consider evidence relevant to consumer perception to determine whether the proposed mark functions as a mark. However, a claim of acquired distinctiveness does not make its proposed mark registrable because "no amount of evidence of acquired distinctiveness can overcome a failure to function refusal." *In re The Ride, LLC*, 2020 USPQ2d 39644, at *10 (TTAB 2020).

[38] TSDR January 20, 2021 Request for Reconsideration at 4 (Sixth Declaration of Brian Kempner) ("none of the advertising of the #LAW mark conducted by Applicant's licensee in any media promotes the existence of the #LAW mnemonic/vanity telephone number without also prominently identifying Morgan and Morgan, P.A., Applicant's licensee, as the source of the legal services provided under the #LAW mark.").